IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SKYCAM, INC., a Delaware corporation, and SKYCAM, LLC, an Oklahoma limited liability company, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 09-CV-294-GKF-FHM |
| v. | ) ) ) | |
| PATRICK J. BENNETT, an individual, and ACTIONCAM, LLC, an Oklahoma limited liability company, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Before the court are defendants' Combined Motion to Strike/Exclude Evidence and Testimony of Mike Williams or, in the Alternative, Motion to Compel and Request for *Daubert* Hearing [Dkt. #119] and Combined Motion to Strike/Exclude Evidence and Testimony of Greg Eschborn or, in the Alternative, Motion to Compel and Request for *Daubert* Hearing [Dkt. #121]. The court held a record hearing on the motions on June 17, 2011.

Defendants challenge the admissibility of these two experts' reports and anticipated testimony on two grounds: (1) that the opinions do not meet standards set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); and (2) that the experts' reports are nothing more than "a conduit through which plaintiffs' counsel has conveyed their opinions and theories of the case." [Dkt. #119 at 7; Dkt. #121 at 1]. In support of their second argument, defendants sought to compel production of attorney's notes made in connection with interviews of the witnesses and/or preparation of the expert reports. At the conclusion of the hearing on the motions, the court ordered plaintiffs' counsel, John Kenney, to produce for in camera inspection notes he took at meetings during which he and the witnesses discussed preparation of the expert

reports.[1]

## I. Witnesses

### A. Mike Williams

Mike Williams is the Vice-President of Interactive for Winnercomm, Inc., plaintiffs' parent company. He has a B.S. in Electronic Engineering from Weber State University in Ogden, Utah. From 1981 to 1991, he was employed by Thiokol Corp., where he worked on design of the space shuttle rocket booster and related projects. From 1991 to 2000 he worked first for Williams Companies and then for Williams Communications, where he was involved in research and development for network communications. He began working for Winnercomm in 2000. In 2004, Williams participated in the evaluation of the Skycam System prior to Winnercomm's purchase of the system from C.F. InFlight Ltd. Williams was also involved in the hiring of P.J. Bennett and worked with him during Bennett's tenure at Skycam. When Bennett left Skycam in January 2006, Williams became Director of Engineering for Skycam and served in that capacity until late 20007, when he returned to Winnercomm. He has continued to work and consult with Skycam, LLC and its successor, Skycam, Inc., to the present. He has work experience as an electrical, electronic and mechanical engineer, and extensive work experience in computer hardware, networking, programming and software development. [Dkt. #120, Ex. 2 at 1-2]

Plaintiffs intend to call Williams as both a fact and an expert witness.[2]

---

[1] Defendants sought production of the notes to test plaintiffs' argument that the experts substantially participated in the preparation of the reports. However, under Fed.R.Civ.P. 26(b)(4), as amended effective December 1, 2010 (and applied retroactively to this issue, which is procedural in nature), plaintiffs' attorney's notes are not discoverable.

[2] Defendants contend plaintiffs failed to designate Williams as an expert witness. However, email exchanges between counsel for the parties indicates plaintiffs identified

According to his Expert Report, Williams intends to testify that certain technology incorporated by Bennett in the Actioncam System was technology used in the Skycam System; that the technology constitutes "trade secrets" and/or "confidential and/or proprietary information" of Skycam, and that Bennett could not have recreated the Actioncam system as quickly as it did without its use of the Skycam technology. He will also opine that certain representations defendants makes concerning the capabilities of the Actioncam system are false. [Dkt. #120, Ex. 3, pp. 3-9].

## B. Greg P. Eschborn

Eschborn has a B.S. in mechanical engineering and an M.B.A. from California Poly Tech University. Since 1997, he has been the president and owner of MotionWorx Corporation, a system integrator engaged in the sales, commissioning and installation of automation hardware and software with a specialty in motion control. Previously, he worked as a sales engineer and regional sales manager for several companies. Eschborn is "familiar with and ha[s] specified, designed and installed systems utilizing many of the parts and control systems made a part of both the Actioncam and Skycam systems," and has "extensive experience with encountering and solving the time consuming problems that inevitably occur when assembling components in a complex system." [Dkt. #122, Ex. 3, p. 2].

Eschborn will opine that much of the information in the Insight Engineering Report of Engineering Design Review of the CF Inflight Skycam System, consists of "trade secrets and/or confidential proprietary information" that were subsequently incorporated in the Actioncam

---

Williams as an expert by September 7, 2010 and provided his expert report to defendants on September 13, 2010. [Dkt. #137, Exs. 1, 6; Dkt. #120, Ex. 2]. Thereafter, defendants deposed Williams regarding, *inter alia,* his expert report. [Dkt. #120, Ex. 4, Williams Dep.]

design, that the report provided Bennett and others with "valuable knowledge of the detailed workings of the system and potential improvements and problems to be considered," that such information "is trade secret and/or confidential and proprietary information," and that "it would take an engineer or company designing a similar system several years of trial and error to obtain the information made available to Mr. Bennett." [Dkt. #122-3, Ex. 6, p. 2]. He will opine that Bennett's "complete knowledge of the Skycam system, trade secrets and/or confidential or proprietary information was used to start and operate Actioncam in a much shorter time and at less cost than would otherwise be possible." [*Id.* at p. 3]. He will opine that defendants' patent applications has disclosed "trade secret and/or confidential and proprietary information conceived and developed in whole or in part at Skycam, LLC by Mr. Bennett." [*Id.* at p. 4].

## II. *Daubert* Challenge

### A. Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *Kumbo Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears

4

the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumbo Tire,* 526 U.S. at 141, 152.

Under the first prong of *Daubert's* two-prong inquiry, the Supreme Court identified four nonexclusive factors the trial court may consider to assist in the assessment of reliability:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing;
>
> (2) whether the opinion has been subjected to peer review;
>
> (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operations; and
>
> (4) whether the theory has been accepted in the scientific community.

*Daubert,* 509 U.S. at 593-94. This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Dodge v. Cotter Corporation,* 328 F.3d 1212, 1222 (10th Cir. 2003), citing *Kumho Tire Co.,* 526 U.S. at 150 (1999). "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumbo Tire,* 526 U.S. at 141-42.

The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony. *Kumho Tire,* 526 U.S. at 152. The court in *Kumho* stated:

> In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish

> among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

526 U.S. at 151.

An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* [3] guesswork. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered").

It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. *Dodge,* 328 F.3d at 1222. "Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1222-23.

The second prong of the *Daubert* inquiry concerns relevancy or "fit." The trial court must conduct inquiry into whether proposed testimony is sufficiently "relevant to the task at hand." *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1234 (10th Cir. 2005) citing *Daubert,* 509 U.S. at 597. A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. *Bitler,* 400 F3d. at 1234. "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the

---

[3] Black's Law Dictionary defines *ipse dixit* as "He himself said it: something asserted but not proved."

issue at hand to warrant a determination that it has relevant 'fit.'" *Id.*

There is no prohibition against a witness testifying in dual capacities as both a fact witness and expert witness, provided the court take precautions to minimize potential prejudice. *U.S. v. Farmer,* 543 F.3d 363, 370 (7th Cir. 2008). Such precautions can include appropriate cautionary instructions and examination of the witness that is structured in such a way as to make clear when the witness is testifying to facts and when he is offering his opinion as an expert. *Id.*

### B. Analysis

#### 1. Williams

Defendants assert the Williams report and testimony should be excluded because the report does not provide any scientific, technical or other special knowledge; therefore, the *Daubert* factors cannot be used to determine the reliability of Williams' opinions. However, strict application of the *Daubert* factors is not required when the reliability of the proposed testimony depends "on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir. 2000), *cert. denied,* 530 U.S. 1268 (2000). Experience alone may provide a sufficient foundation to qualify an expert. *See E.E.O.C. v. Beauty Enters, Inc.,* 361 F.Supp.2d 11, 19 (D. Conn. 2005). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier,* 387 F.3d 1244, 1261) (11th Cir. 2004). Williams has a degree in electronic engineering and 30 years of experience, including particular experience in the fields of network communications systems and software development, He began working on the Skycam system in 2004 and has continued to be involved with the

7

system as Director of Engineering and on a consulting basis. The court finds these qualifications meet the first prong of the *Daubert* test for reliability.

Defendants also challenge Williams' opinions as unsubstantiated and impermissible *ipse dixit*. The court agrees that certain statements in the Williams report are nothing more than *ipse dixit.* For example, Williams states: "...the details of how to make [basic components of an aerial system] actually operate in the complex high speed working environment required to present stable aerial camera photography over a moving subject on a football or other athletic event in my opinion could not be recreated in the short time that Actioncam worked on this project**."** [Dkt. # 119, Ex. 3 at p. 4]**.** Similarly, in discussing Actioncam's stabilized camera head technology, Williams stated: "this is not work that could have been done without thorough knowledge of the Skycam system, and the trial and error involved there identified improvements and enhancements that could be implemented." [*Id.* at p. 8]. None of the experts will be permitted to make such conclusory statements unless testimony setting forth the grounds for the opinion is elicited beforehand.

Likewise, the Williams report repeatedly characterizes certain Skycam information as "trade secret" or "proprietary and confidential information." Federal Rule of Evidence 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The advisory committee note to the rule explains:

> The abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. *These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach*, somewhat in the manner of oath-helpers of an earlier day. *They also stand ready to exclude opinions phrased in terms of*

*inadequately explored legal criteria.* Thus the question, "Did T have sufficient mental capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed.R.Evid. 704 adv. comm. note (emphasis added). The Tenth Circuit, citing the advisory committee note, has stated, "Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *United States v. Simpson,* 7 F.3d 186, 188 (10th Cir. 1993).[4] Thus, in trade secret cases, courts have permitted experts to testify about what processes and materials were "unique;" what information a party possessed; and the custom and usage of the industry–but *not* that the information was a "trade secret." *SL Montevideo Technology, Inc. v. Eaton Aerospace, LLC,* 2005 WL 1923811, *7 (D. Minn.) ("Although experts can opine on the ultimate issues of *fact*, the Court must guard against invading the province of the jury on a question which the jury is entirely capable of answering without the benefit of expert opinion.") Similarly, an expert may testify that alleged trade secrets were ascertainable through reverse engineering; that their development was not well documented; that they did not differ materially from information widely known in the industry; and that many elements of the alleged trade secrets were readily available in the public domain–but *not* that the information was not a "trade secret." *Raytheon Co. v. Indigo Systems Corp.,* 598 F.Supp.2d 817, 821-22 (E.D. Tex. 2009).

    Consistent with these cases, the court will permit Williams to testify about Skycam's

---

[4]In *Specht v. Jensen,* 853, 814 (10th Cir. 1988), *cert. denied* 488 U.S. 1008 (1989)(Seymour, J., dissenting), the dissent suggested a more appropriate rationale for excluding such evidence is lack of helpfulness to the jury.

9

treatment of the alleged "trade secrets," custom and practice in the industry regarding such information, whether the alleged trade secrets differed materially from information widely known in the industry, whether Bennett had access to the information, and whether the Actioncam system incorporated the information. Williams will *not,* however, be permitted to opine that the information was "trade secret" or "confidential or proprietary information," as this testimony would not be helpful to the jury and invades the province of the jury on a question it is capable of answering without benefit of expert testimony. Fed.R.Evd. 702.

### 2. Eschborn

Defendants contend Eschborn's Expert Report and proposed testimony should be excluded because he lacks qualification as an expert and his methodology is flawed. The court finds Eschborn's education and work experience satisfy *Daubert* requirements and his methodology meets the *Daubert* standards for admissibility. The alleged shortcomings in both his qualifications and methodology, which may be explored in cross examination, go to the weight of his opinions.

However, as with Williams, Eschborn will not be permitted to offer *ipse dixit* opinions or testify that information was "trade secret" or "confidential or proprietary information."

Further, to avoid cumulative testimony, only one expert will be allowed to testify on a particular topic. So, for example, *either* Williams *or* Eschborn may testify about custom and usage in the industry regarding efforts to guard the confidentiality of specific types of information, but the court will not allow both experts to testify on that topic.

### III. "Substantial Participation" by Experts in Preparation of Reports

Rule 26(a)(2)(B) requires an expert report to be "prepared and signed by the witness."

Fed.R.Civ.P. 26(a)(2)(B). The Advisory Committee Notes to Rule 26 state:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Rule 26 Advisory Committee Notes. "It is improper for counsel to prepare the expert's opinion from 'whole cloth,' and then have the expert sign the drafted report as his own." *Minnesota Lawyers Mutual Insurance Company v. Batzli,* 2010 WL 670209, at *2 (E.D. Pa.) citing *Trigon Ins. Co. v. U.S.,* 204 F.R.D. 277, 293 (E.D. Va. 2001). Although Rule 26(a)(2)(B) allows some attorney involvement in the preparation of an expert report, "the expert must also substantially participate in the preparation of the report." *Trigon* at 293, citing *Indiana Ins. Co. v. Hussey Seating Co.,* 176 F.R.d. 291, 292 (S.D. Ind. 1997) and *Manning v. Crockett,* 1999 WL 342715, at *1 (N.D .Ill. 1999).

In this case, Williams testified that he and John Kenney met for seven or eight hours and outlined what would be in the report, that Kenney had the report typed up based on notes Kenney took during the meeting, and that Williams then reviewed and made revisions to the report. [Dkt. #137, Ex. 1, Williams Dep., 26-28]. The court has reviewed notes Kenney took during the meeting with Williams, notes of an earlier meeting between the two, and the draft report. The court concludes from its review that Williams substantially participated in preparation of the report.

Eschborn testified he met with Kenney for seven hours, that he "dictated the concept" of his opinions and Kenney wrote the opinions on a note pad and then wrote the report based on Eschborn's opinions. The draft report was emailed to Eschborn for his review and signature.

11

[Dkt. #122, Ex. 2, Eschborn Dep., 190-197]. The court has reviewed notes Kenney took during the meeting with Eschborn, Kenney's notes outlining the report, notes Kenney made during initial inspection by Eschborn of the Actioncam system, and the draft report. The court is satisfied that Eschborn substantially participated in preparation of his report.

### IV. Conclusion

For the foregoing reasons, defendants' Combined Motion to Strike/Exclude Evidence and Testimony of Mike Williams or, in the Alternative, Motion to Compel and Request for *Daubert* Hearing [Dkt. #119] is granted in part and denied in part and defendants' Combined Motion to Strike/Exclude Evidence and Testimony of Greg Eschborn or, in the Alternative, Motion to Compel and Request for *Daubert* Hearing [Dkt. #121] is granted in part and denied in part.

ENTERED this 27th day of June, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma