# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SKYCAM, INC., a Delaware corporation, and SKYCAM, LLC, an Oklahoma limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>PATRICK J. BENNETT, an individual, and ACTIONCAM, LLC, an Oklahoma limited liability company<br><br>    Defendants. | Case No. 09-CV-294-GKF-FHM |

## OPINION AND ORDER

This matter is before the court on the issue of which plaintiff – Skycam, Inc. or Skycam, LLC – is the proper party plaintiff as to each the four claims remaining to be tried to a jury in this case. The parties submitted trial briefs on the issues, and an evidentiary hearing was conducted on July 25, 2011.

The following claims remain for jury trial:

(1)  breach of contract against defendant Bennett (Third Claim for Relief in Plaintiffs' Third Amended Complaint);

(2)  misappropriation of trade secrets against defendants Bennett and Actioncam under the Oklahoma Uniform Trade Secrets Act, 78 O.S. §85, et seq. (Second Claim for Relief);

(3)  false representation claims under the Oklahoma Uniform Deceptive Trade Practices Act, 78 O.S. § 54.A and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) against defendants Bennett and Actioncam (Fourth Claim for Relief); and

(4)  a claim against defendants Bennett and Actioncam for ownership of the Actioncam Patent Application (Ninth Claim for Relief).

Plaintiffs assert that all assets and related rights were transferred by Skycam LLC to

Skycam, Inc. Defendants contend Skycam LLC remains the owner of all four claims.

**I. Findings of Fact**

1. The Skycam® System (the "Skycam System") is an aerial camera system used to record live sporting events. Prior to April 2004, the Skycam System was owned by CFInflight, Ltd. ("CFInflight"). On July 15, 2004, Skycam LLC purchased the Skycam System from CFInflight. [Dkt. #252, PX 142, 7/15/04 Asset Purchase Agreement between CFInflight and Skycam LLC].

2. Defendant Patrick J. Bennett ("Bennett") was employed by Skycam LLC from August 2004 to January 3, 2006, at which time his employment was terminated pursuant to the terms of a Separation Agreement and Release (the "Separation Agreement") dated January 5, 2006. [Dkt. #252, PX 1, 1/5/06 Separation Agreement]. In the Separation Agreement, Bennett acknowleged and agreed that

> During his employment, [Bennett] has been given access to or has developed information which is confidential or proprietary in nature, and/or qualifies as a trade secret. All such information and material shall be treated by [Bennett] as confidential information to be protected from disclosure or unauthorized use. Such confidentiality may be waived only by the written consent of [Skycam]. For the purposes of this Agreement, 'confidential or proprietary' information means information unique to [Skycam] which has a significant business purpose and is not known or generally available from sources outside the Company.

[*Id.,* PX 1 at 3].

3. On February 2, 2006, Winnercomm Holdings, Inc., a Delaware corporation ("WHI"), was formed. On February 24, 2006, WHI acquired the ownership interest in Skycam LLC and became its sole member. [*Id.,* DX 16, 12/24/06 Contribution Agreement between Winnercomm Holdings, Inc. Investors; DX 17, Schedules to Contribution Agreement; DX 18, Written Consent

of Sole Member of Winnercomm Holdings, Inc.]. Shortly thereafter in July 2006, WHI acquired the assets of Cablecam, LLC, another computer-controlled aerial camera services provider.

4. On January 9, 2009, Outdoor Channel Holdings, Inc. ("OCH") formed Skycam Inc., Winnercomm, Inc. a Delaware corporation ("Winnercomm DE"), and Cablecam, Inc., a Delaware corporation, as subsidiary entities.

5. On January 12, 2009, pursuant to an Asset Purchase Agreement (the "2009 APA"), OCH acquired the assets of Skycam LLC, Cablecam, LLC and Winnercom-OK . [JX 3-4, 2009 APA and Disclosure Schedule].

6. Contemporaneously, OCH assigned the assets acquired from Skycam LLC to Winnercomm-DE and then to Skycam Inc., pursuant to assignments dated January 12, 2009, and amendments thereto, dated January 12, 2009 (collectively, the "Assignment"). [JX 6-7].

7. The preamble to the 2009 APA states, in pertinent part:

> WHEREAS, Skycam owns the rights to a business of developing, operating, renting, marketing, manufacturing and otherwise dealing with an advanced computer controlled mobile aerial camera suspension system (the "Skycam System") (collectively, the "Skycam Business");
>
> \* \* \* \*
>
> WHEREAS, each of the Sellers desires to sell, and the Buyer desires to purchase all or substantially all of the assets and operations of Sellers, and assume certain specified liabilities of each Seller, as they pertain to the Purchased Assets (as defined herein) as of the Closing Date (as defined herein) for the consideration and upon the terms and conditions set forth in this Agreement; . . .

[JX 3, p. 1].

8. Article I of the 2009 APA contains broad conveyance language:

> 1.1 Purchased Assets. Subject to the terms and conditions hereof, at the Closing, each Seller shall assign, convey, sell, and/or transfer to Buyer, and Buyer shall purchase or be assigned *all of each Seller's rights in and to all of the assets of the Sellers, including,*

3

*without limitation*, the following assets (excluding those assets excluded from this sale pursuant to Section 1.2) (collectively, the "**Purchased Assets**"):

(a) The **"Skycam Assets,"** which shall include, *without limitation:*

1) all right, title and interest in and to the equipment, tools, plans, specifications, designs, improvements, bills of material, inventory and parts (including spare parts inventory) work in progress and supplies representing the Skycam System;

2) all rights, titles and interests that Skycam has or may have to Intellectual Property, including without limitation, Intellectual Property owned, used, useful or developed in connection with the ownership of the Skycam System and the operation of the Skycam Business (the **"Skycam Intellectual Property"**). The Skycam Intellectual Property is set forth on 1.1(a)(2);

3) all of Skycam's rights in and to certain computer software used in the Skycam Business, including but not limited to source and object codes for operating and controlling all aspects of the Skycam System;

4) all documents, blueprints and other materials, whether in written, magnetic, digital, or other form, relating to the Skycam System;

5) all real estate leasehold interests set forth on Schedule 1.1(a)(5);

6) all of Skycam's accounts receivable, as set forth on Schedule 1.1(a)(6); and

7) the contracts to which Skycam is a party listed on Schedule 1.1(a)(7) (the "**Skycam Contracts**").

[JX 3, p. 2] (emphasis added).

9. Schedule 1.1(a)(2), "Skycam Intellectual Property," lists a patent for a camera assembly not at issue in this case, the trademark "Skycam"–Registration No. 1634708, and the domain name www.skycam.tv. [JX 4, Schedule 1.1(a)(2) at 2]. None of the alleged trade secrets or confidential or proprietary information at issue in this case is listed in Schedule 1.1(a)(2). [*Id.*].

10. Schedule 1.1(a)(1)(7) lists 17 agreements, several of which are confidentiality or nondisclosure agreements. The Separation Agreement with Bennett is not listed on Schedule

4

1.1(a)(1)(7).  [JX 4, Schedule 1.1(a)(1)(7)].

11. As set forth above, Section 1.1 of the 2009 APA states that only those assets excluded from the sale pursuant to Section 1.2 are excluded from the transfer.  Section 1.2 lists the following assets excluded from the transfer:

> **Assets Excluded from Purchase.**  Other than the Purchased Assets, no other asset of any Seller shall be transferred and sold to Buyer pursuant to this Agreement, including, without limitation, the following (the "Excluded Assets"):
>
> (a) all rights that accrue or will accrue to any Seller under this Agreement;
>
> (b) all of Sellers' financial and organizational books and records; and
>
> (c) any other assets set forth on Schedule 1.2(d).

[JX 3, p. 4].

12. Schedule 1.2(d), in turn, lists 34 items, most of which are financing or employment agreements. [JX 4, Schedule 1.2(d) at 79-80].  The Separation Agreement is not listed as an excluded asset on Schedule 1.2(d). [*Id.*].

13. Article 4 of the 2009 APA contains certain representations and warranties made by the sellers as of the date of the agreement.  Article 4 does not contain language or limitations pertaining to transfer of the Purchased Assets.  Included in Article 4 are the following representations:

> 4.5 Sufficiency of Assets.  **The Purchased Assets include all tangible and intangible assets and rights that are used or held for use in the operation or conduct of the Businesses, and are sufficient for the conduct of the Businesses by the Buyer following the Closing in substantially the same manner as conducted by each Seller prior to the date hereof**.  None of the past or present affiliates of any Seller participates (or has participated) in the operation or conduct of, or own or have any rights to any assets or property sued or held for use in the operation or conduct of, the Businesses or the Purchased Assets.

5

\* \* \* \*

4.8    Litigation.  Except for those matters set forth in the Seller Disclosure Schedule, there are no claims, actions, suits, proceedings (arbitration or otherwise) or investigations involving or affecting any such Seller or the Business or Purchased Assets, or its directors, managers, officers, members or shareholders in their capacities as such, pending, or to the best of such Sellers' Knowledge, threatened, before or by any court or governmental agency or instrumentality, or before an arbitrator of any kind, at law or in equity; and no pending claim, action, suit, proceeding or investigation, if determined adversely, would either individually or in the aggregate, have an adverse effect on the assets, earnings, business, operations or financial condition of any such Seller. ... Except as otherwise stated above, to any such Sellers' Knowledge there is no basis for any claims, actions, suits, proceedings, or investigations as discussed above.

\* \* \* \*

4.11    Intellectual Property.

(a) For purposes of this Agreement, **"Intellectual Property"** shall mean any and all proprietary and technical information, patents and patent rights, patent applications, service marks (registered and unregistered), trademarks (registered and unregistered), trademark applications and service mark applications and **"Sellers' Intellectual Property"** shall mean the Winnercomm Intellectual Property, Skycam Intellectual Property and the Cablecam Intellectual Property. ...

(b) To each Seller's Knowledge, each Seller has taken commercially reasonable steps to maintain the confidentiality of trade secrets and confidential information included in the Intellectual Property.

(c) There are no inventions, know-how or trade secrets owned by any such Seller or, to any such Seller's Knowledge, conceived by an employee of any such Seller on behalf of such Seller, that relate to the Businesses as presently conducted by such Seller, and that are not set forth on Schedule 1.1(a)(2), 1.1(b)(3) or 1.1(c)(4).

(d) No third party has asserted any claims that they own any of Sellers' Intellectual Property, or that the use of any of the Sellers' Intellectual Property, or the operation of the Businesses infringes a third party's Intellectual Property rights.

(e) To any such Seller's Knowledge, its Intellectual Property being transferred, assigned and/or licensed to Buyer in this transaction constitutes all of the Intellectual Property necessary for Buyer to operate the Businesses as presently conducted by such Seller.

[JX 3, § 4.11, p. 10].

14. Article 8 of the 2009 APA, entitled "Miscellaneous," provides in pertinent part:

8.1 <u>Survival of Representations and Warranties.</u>  Except for Section 4.4 (Title), which shall survive for twelve (12) months following the Closing, none of the representations and warranties made by the parties in this Agreement and in the certificates, documents and schedules delivered pursuant hereto shall survive the consummation of the transactions contemplated hereunder.

[JX 3, § 8.1, p. 16].

15. The Bill of Sale executed by Skycam LLC includes the following statement:

WHEREAS, Section 1.1 of the Asset Purchase Agreement contemplates that Seller shall assign, convey, sell and/or transfer to Buyer all of its rights in and to the Skycam Assets...

[PX 1046]. Further, Section 2 states:

<u>Assignment.</u>  Subject to the terms and conditions of the Asset Purchase Agreement, Seller hereby assigns, conveys, transfers and delivers to Buyer, and Buyer hereby acquires and accepts from the Seller, all of its right, title and interest in the Skycam Assets. Notwithstanding anything herein to the contrary, the Skycam Assets shall not include any of the Excluded Assets.

[*Id.*].

16. On April 7, 2009, Skycam LLC registered the FEA of Component with the United States Copyright Office Registration No. VAu000980883. [DX 2, U.S. Copyright Registration]. Plaintiffs have taken the position in this lawsuit that Skycam LLC was the "author" of the copyrighted material.

17. This Court finds that the intention of the parties to the 2009 APA can be gathered from a four-corners' examination of the instrument and is thereby free from ambiguity.

18. Alternatively, in the event the Court of Appeals were to conclude that an ambiguity exists, this Court finds from the extrinsic evidence presented that the parties to the 2009 APA intended to assign causes of action, contract rights, trade secrets and intellectual property rights to

7

OCH and ultimately, to Skycam Inc.

19. Tom Hornish, the Executive Vice President, Chief Operating Officer, General Counsel, and Secretary of OCH, participated in the negotiation and drafting of the 2009 APA. Hornish testified, and in support of its alternative finding in the immediately preceding paragraph, the Court specifically finds:

a) that OCH's intent was to acquire and convey to its newly formed subsidiary, Skycam, Inc., all of the assets of Winnercomm, Skycam LLC and Cablecam, but not their liabilities;

b) that OCH would not have closed without having acquired all the assets of Skycam, LLC;

c) that Fortress Credit Corp. had a $40 million lien on the assets of Skycam and Cablecam, that Fortress was paid off and released its lien in connection with the 2009 APA, and that OCH paid $5.75 million for the assets – an amount Hornish characterized as a "fire sale" price;

d) that Hornish was aware of the potential claim against Bennett at the time of closing, and that OCH intended to acquire the potential claim because if it was not acquired, someone could use the technology OCH was acquiring;

e) that the potential claim against Bennett was not ripe at the time of the 2009 APA, but Hornish investigated the potential claim following closing and determined that an action should be brought;

f) that Hornish understood that OCH was acquiring all Skycam, LLC's intellectual property to be able to run the business after the acquisition; and

g) that OCH's intent and purpose with regard to subsection 4.11(c) (contained within in

the "Representations and Warranties" section of the 2009 APA) was to try to get the Sellers to explicitly state the inventions, know-how or trade secrets owned by the Sellers; and that although Skycam LLC specifically identified only three items, it wasn't something that Hornish "drilled down" and told Skycam LLC it was missing items that needed to be included.

20. Nic Salomon, the manager for finances and operations of Skycam, LLC from April 2006 until January 2009, and President of Skycam, Inc. since January 2009, testified, and in support of its alternative finding in paragraph 18 above, the Court specifically finds:

a) that Salomon, who had worked on the 2006 acquisition of Skycam LLC by WHI from the fall of 2005 to February 2006, considered Skycam LLC to have the following confidential and proprietary information and trade secrets prior to the 2009 acquisition by the Outdoor Channel: 1) stabilization of Skycam's camera systems and work being done on a potential roll axis; 2) Skycam's LX or two-point Skycam system and work surrounding how to manage cable; 3) creating a simpler surveying method; and 4) adapting its capabilities with television networks to support and integrate 1st and 10 graphics;

b) that Salomon informed Hornish prior to closing of the 2009 APA that there was an ex-employee who had posted some of Skycam's confidential information on his website, that it was possible he had taken some of Skycam's proprietary/confidential/trade secret information, and that there was a possibility of litigation with Bennett depending on what Skycam continued to learn; and

c) that after the closing of the 2009 APA in January, 2009, Salomon continued to manage the new Skycam, Inc. business, that there was no difference in the assets, rights or operations of the business, and that Skycam, Inc. continued to operate the business the same way Skycam, LLC

9

had done previously.

21. James Wilburn, Chairman of Winnercom, Inc. and WHI, testified, and this Court finds in support of its alternative finding in paragraph 18 above, that the 2009 APA transferred all the assets of Skycam, LLC to OCH, including all trade secrets, and all confidential and proprietary information.

## II. Conclusions of Law

Two legal issues require resolution by the court: (1) did the 2009 APA assign the assets and claims at issue in this lawsuit from Skycam LLC to OCH (and ultimately to Skycam, Inc.)? and (2) are the claims for misappropriation of trade secrets under the Oklahoma Uniform Trade Secrets Act ("OUTSA") and for unfair competition under the Lanham Act and the Oklahoma Deceptive Trade Practices Act ("ODTPA") assignable under Oklahoma law?

### A. The 2009 APA Assigned the Assets/Claims at Issue

The terms of a contract, if unambiguous, clear and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

Upon examination of the 2009 APA, this Court concludes that the contract is complete in itself and, when viewed in its entirety, is unambiguous. More specifically, the 2009 APA is unambiguous in its transfer of all assets other than those specifically excluded from Skycam LLC to OCH. The 2009 APA states that it was the desire of the Sellers, including Skycam LLC, to sell "all or substantially all of the assets." In defining "Purchased Assets," the 2009 APA refers to "all of each Seller's right in and to all of the assets of Sellers." Although Section 1.1 contains a

list of assets included in the transfer, the 2009 APA expressly states that the list is not exhaustive by noting that the Purchased Assets include, "without limitation," the specifically identified assets. Among the specifically identified assets are "all rights, titles and interests that Skycam has or may have to Intellectual Property." "Intellectual Property" is defined as including "any and all proprietary and technical information." In Section 4.5, the Sellers represent and warrant that the Purchased Assets include "all tangible and intangible assets and rights that are used or held for use in the operation or conduct of the Buinsess." The only assets excluded from the transfer involve (a) the rights accruing to the Sellers under the APA itself; (b) all the Sellers' financial and organizational books and records; and (c) certain agreements related to financing, employment agreements and leases.

Subsection 4.11(c) is part and parcel of the "Representations and Warranties" section of the 2009 APA. Skycam LLC's omission to list additional alleged "inventions, know-how or trade secrets" on Schedule 1.1(a)(2) does not function as a matter of law to limit the inventions, know-how, trade secrets and confidential and proprietary information actually owned by Skycam LLC and transferred to OCH.

In light of the above and foregoing, this court concludes that the four corners of the contract evidence a clear intent to transfer all assets of Skycam LLC to OCH.

In the unlikely event a portion of the 2009 APA is deemed to be ambiguous, the parties to the agreement are in accord that the APA transferred all assets and claims at issue in this lawsuit from Skycam LLC. "Where the parties [to a contract] have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning." *City of Springfield v. Washington Public Power Supply System*, 752 F.2d 1423, 1427 (9th Cir. 1985),

11

*quoting* Restatement (Second) of Contracts, § 201(1) (1981).  The Court finds no reason not to defer to the undisputed intention of the parties to the APA, and concludes that the assets, rights and claims at issue herein were transferred to Skycam, Inc.

Skycam, Inc. has standing to assert the trade secret claim at issue in this case because the APA transferred all of Skycam LLC's assets at issue Skycam, Inc.  *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2006 WL 3734384 (N.D. Cal. 2006) (stating that "it makes more sense to allow the current owner to sue for past misappropriation than a prior owner (assuming that the parties did not agree otherwise when transferring the trade secret).") Similarly, the reasoning in *Memry Corp.* supports a conclusion that Skycam, Inc. has standing to assert both the false representation claim and the patent ownership claim, inasmuch as both relate to the assets assigned pursuant to the APA.

This Court concludes that the Separation Agreement and the claim arising therefrom were properly assigned to Skycam, Inc.  As an asset belonging to Skycam LLC and not specifically excluded from the 2009 APA, the Separation Agreement with Bennett was assigned to Skycam, Inc.  Oklahoma has long held that rights under a contract are presumed to be assignable, unless the parties expressly provide otherwise, or if the assignment would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him.  *Beattie v. State ex rel. Grand River Dam Authority*, 41 P.3d 377, 381 (Okla. 2002), *citing* the Restatement (Second) of Contracts, § 317(2).  The Court finds no reason why any and all rights under the Separation Agreement ought not be assignable.

**B. The Trade Secret Misappropriation and Unfair Competition Claims are Assignable**

Defendants contend 12 O.S. §2017 prohibits the assignment of the claims for trade secret misappropriation and unfair competition. That provision, commonly referred to as the "Real Party in Interest" statute, provides in pertinent part:

> D. ASSIGNMENT AND SUBROGATION OF CLAIMS. The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation.

12 O.S. §2017(D).[1] Plaintiffs assert, however, that under 60 O.S. §313, the transfer of tort claims related to property rights *is* permissible. That statute states:

> **Thing in action may be transferred**
>
> A thing in action,[2] arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office.

60 O.S. § 313.

The seminal case on assignability of tort claims in Oklahoma is *Momand v. Twentieth-Century Fox Film Corp.,* 37 F. Supp. 649 (W.D. Okla. 1941). There, the court considered whether claims arising under the Sherman Anti-Trust Act, 15 U.S.C. § 15, were assignable under Oklahoma law.

---

[1] The purpose of the real party in interest statute is to protect the defendant from being subjected later to a second suit for the same cause. *Joplin v. Ely,* 365 P.2d 735, 736 (Okla. 1961); *Oklahoma Quarter Horse Racing Ass'n. v. Remington Park, Inc.,* 987 P.2d 1216, 1217 n. 1 (Okla. Civ. App. 1999), rehearing den., cert den. (1999). Inasmuch as Skycam, Inc. and Skycam LLC are the only two parties that appear to have potential ownership of the claims asserted, it does not appear defendants are at risk of a later suit for the same cause of action.

[2] A "thing in action" is "a right to recover money or other personal property, by judicial proceedings." 60 O.S. § 312.

In *Momand,* plaintiff's assignors had been required to enter into contracts which he claimed violated the Sherman Act. Defendants contended the alleged causes of action sounded in tort and Oklahoma law forbids the assignment of a cause of action sounding in tort. *Id.* at 651. The court reviewed applicable Oklahoma statutes and case law, as well as federal and state case law from other states, and concluded:

> Under the Federal decision, supra, and many state decisions, construing somewhat the same statutes, the rule of non-assignability has been confined to that class of tort actions which fall upon the person, such as personal injury caused by negligence, assault and battery, or to the reputation, as by libel or slander; for criminal conversation; for false arrest; for seduction; for malicious abuse of process; for malicious prosecution. A clear distinction is recognized in many states between these causes of actions for wrongs which affect the person strictly and all others. See 5 Corpus Juris at page 889; 6 Corpus Juris Secundum, Assignments, § 34, at page 1082. *It is the general rule now that a right of action in tort, which does not apply to the person strictly, but involves directly or indirectly, a right of property or injury to one's property or estate, is assignable.* Assignability is the rule and non-assignability the exception.

*Id.* at 657 (emphasis added). The court proceeded to analyze the nature of the cause of action created by the Sherman Act in order to determine whether or not it fell into the category of cases, the assignment of which are prohibited. *Id.* The court concluded, based on prior case law construing the Sherman Act, that the right of action created by the act was one involving an injury to one's property or estate. *Id.* Turning to the complaint, the court concluded plaintiff's assignors were alleged to have suffered a detriment to their property and business. *Id.* at 658. Thus, the court concluded, the cause of action was assignable.

An Oklahoma appellate court, citing *Momond,* reached a similar conclusion in *Chimney Rock Limited Partnership v. Hongkong Bank of Canada,* 857 P.2d 84 (Okla. Civ. App. 1993). There, the assignee of the beneficiary of a letter of credit sued the debtor and the bank that issued the letter of credit, asserting claims for wrongful dishonor of the letter of credit, interference with

business relations and conspiracy to interfere with business relations. The appellate court held that the first claim was clearly an assignable contract claim and the remaining two claims were assignable as arising out of contract. *Id.* at 89.

Applying *Momand,* this court must first determine the nature of claims for trade secret misappropriation and unfair competition.

### 1. Trade Secret Misappropriation

Plaintiffs have sued for misappropriation of trade secrets under the OUTSA. A "trade secret" is, by statutory definition, a type of property (typically referred to as "intellectual property").[3] Available remedies for its misappropriation include injunctive relief as well as damages for actual loss and unjust enrichment. 78 O.S. §§ 87-88. Plaintiffs' Third Amended Complaint alleges defendants misappropriated and misused plaintiffs' trade secrets and confidential proprietary information in violation of the state Trade Secrets Act; that they have been damaged and continue to be damaged; and that defendants have been unjustly enriched as a result of their unlawful actions. [Dkt. #86, Third Amended Complaint, ¶¶66-68]. They seek injunctive relief and damages. [*Id.,* ¶¶67-71].

---

[3]The OUTSA defines "trade secret" as:

...information, including a formula, pattern, compilation, program, device, method, technique or process that:

a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

78 O.S. § 86(4).

Quite clearly, the trade secret misappropriation claim relates to a "right of property" as described in *Momand* and not a personal right. Thus, the claim is assignable under 60 O.S. § 313.

## 2. False Representation/Unfair Competition

Plaintiffs have asserted a claim for false representation under the Oklahoma Deceptive Trade Practices Act and Lanham Act. Both laws are aimed at protecting competing business interests. *See Thomas v. Metropolitan Life Insurance Co.,* 540 F.Supp.2d 1212,1228 (W.D. Okla. 2008) ("It has been definitively established that the [ODPTA] protects competing business interests.") (citing *Conatzer v. American Mercury Ins. Co., Inc.,* 15 P.3d 1252, 1254 (Okla. Civ. App. 2000)); *Stanfield v. Osborne Industries, Inc.,* 52 F.3d 867, 873 (10th Cir. 1995) ("[T]o have standing for a false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury."). Available remedies include injunctive relief and actual monetary damages. 78 O.S. §54; 15 U.S.C. § 1125(a)(5). The Third Amended Complaint alleges, *inter alia,* that defendants have misrepresented to the public the Actioncam system, which incorporates the Skycam System, as being a product of Actioncam and have misrepresented the capabilities of the Actioncam System which reflect negatively on the capabilities of the Skycam System with the intent of increasing Actioncam's market share and/or decreasing Skycam's market share. [*Id.,* ¶¶82-84]. They seek actual, consequential and punitive damages. [*Id.,* ¶85].

The court concludes plaintiffs' false representation claim relates to business and/or property rights rather than to personal rights and are therefore assignable under 60 O.S. § 313.

## II. Conclusion

For the foregoing reasons, the court finds that Skycam, Inc. is the owner of the remaining claims asserted in this case against defendants for breach of contract, misappropriation of trade secrets, unfair competition/false representation, and patent ownership.

ENTERED this 1st day of August, 2011.

.

*[signature]*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma