# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

SKYCAM, LLC, a Delaware limited liability, )
company, )
                                            )
                Plaintiff, )
                                              )
v. )      Case No. 09-CV-294-GKF-FHM
                                              )
PATRICK J. BENNETT, an individual, and )
ACTIONCAM, LLC, an Oklahoma limited )
liability company, )
                                              )
                Defendants. )

## OPINION AND ORDER

Before the court is the Application for Injunction [Dkt. #305] filed by plaintiff, Skycam, LLC, a Delaware limited liability company ("Skycam"). Skycam also listed injunctive relief as a remedy sought in the Pretrial Order filed prior to the jury trial held in this case. [Dkt. # 267, pp. 5-6]. Skycam seeks injunctive relief with respect to its trade secret misappropriation claim under the Oklahoma Uniform Trade Secrets Act ("OUTSA"), OKLA. STAT. 78, § 85 *et seq.,* and its unfair competition claim under the Oklahoma Deceptive Trade Practices Act ("ODTPA"), OKLA. STAT. tit. 78, § 51 *et seq*. and the Lanham Act, 15 U.S.C. § 1125(a). Specifically, Skycam seeks an injunction prohibiting defendants from:

(1) utilizing Skycam's trade secrets or, alternatively, if exceptional circumstances are found, awarding Skycam a reasonable royalty for future use or potential use of the trade secrets; and

(2) selling, offering for sale, distributing, marketing, telemarketing, advertising and/or placing advertising and/or otherwise promoting its aerial camera system through the use of false and/or misleading representations as to its capabilities, speed, accuracy or superiority over Skycam's system; and ordering defendants to undertake advertising to correct prior false statements.

[Dkt. #305 at 1-2].

**I. Background/Procedural Status**

The parties manufacture competing aerial camera systems for use in the broadcast of sporting events. Skycam sued defendant Patrick Bennett, a former Skycam employee, for breach of a separation agreement that prohibited him from using or disclosing Skycam's trade secrets and/or confidential or proprietary information. Skycam also asserted federal and state claims of misappropriation of trade secrets and unfair competition/false advertising against Bennett and his company, Actioncam. Additionally, it asserted a claim for an ownership interest in defendants' pending patent applications based on an "employed to invent" theory.

The breach of contract, trade secret misappropriation and unfair competition claims were tried to a jury from August 17, 2011 to September 2, 2011. The jury returned verdicts in favor of Skycam and against defendants, as follows:

- The jury found in favor of Skycam and against Bennett on the breach of contract claim and awarded Skycam $100,000 in damages;

- The jury found in favor of Skycam against Bennett and Actioncam on Skycam's claim for misappropriation of trade secrets, and awarded Skycam $239,000 in damages against both defendants, jointly and severally;

- The jury found in favor of Skycam and against Bennett and Actioncam on Skycam's claim for unfair competition and awarded Skycam $180,000 in damages against both defendants, jointly and severally;

- The jury awarded punitive damages of $75,000 against Actioncam.

Subsequently, Skycam filed the pending motion for injunction.

## II. Misappropriation of Trade Secrets

The OUTSA permits entry of injunctions as follows:

**Injunctions—Court orders**

    A. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order

to eliminate commercial advantage that otherwise would be derived from the misappropriation.

B. In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of a misappropriation that renders a prohibitive injunction inequitable.[1]

C. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

OKLA. STAT. tit. 78, § 87.

For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Southwest Stainless, LP v. Sappington,* 582 F.3d 1176, 1191 (10th Cir. 2009).

As for the first element, Skycam achieved actual success on the merits through the jury's verdict.

With respect to irreparable harm, the Tenth Circuit has held that "[w]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable

---

[1] The comment to § 2 of the Uniform Trade Secrets Act, upon which § 87 of OUTSA is based, states:

> Section 2(b) deals with the special situation in which future use by a misappropriator will damage a trade secret owner but an injunction against future use nevertheless is inappropriate due to exceptional circumstances. Exceptional circumstances include the existence of an overriding public interest which requires the denial of a prohibitory injunction against future damaging use and a person's reasonable reliance upon acquisition of a misappropriated trade secret in good faith and without reason to know of is prior misappropriation that would be prejudiced by a prohibitory injunction against future damaging use.

harm to the plaintiffs need not be shown." *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d

639, 651 (10th Cir. 2004) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) and

*Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981); see also

*E.E.O.C. v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987) ("[w]hen an injunction is

expressly authorized by statute and the statutory conditions are satisfied, the movant need not

establish specific irreparable injury to obtain a preliminary injunction").  In this case, Skycam

prevailed at trial on the merits of its OUTSA claim for misappropriation of trade secrets,[2] and

Actioncam's continued use the offending camera system constitutes ongoing misappropriation

under the statute.  Other courts hold that irreparable harm is presumed where a trade secret has

been misappropriated.  *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2nd Cir.

1984) (holding that irreparable harm is presumed because "[a] trade secret once lost is, of course,

lost forever"); *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F.Supp. 119, 124-125

(E.D.N.Y. 1997).

     In any event, Skycam has proved irreparable harm.  The Actioncam Patent Application

discloses certain trade secrets and therefore, irreparable harm exists.  In addition, Actioncam's

competition in the marketplace using the misappropriated trade secrets constitutes irreparable

harm.

     The court finds and concludes that the threatened injury to Skycam of continued trade

secret misappropriation outweighs the harm that the injunction may cause Actioncam.  Further,

as more fully discussed below, a properly tailored injunction, if issued, will not adversely affect

---

[2] Defendants argue that because the jury did not make findings regarding *which* of the 15 alleged
trade secrets were misappropriated, entry of an injunction is precluded.  However, where a
verdict is general, a court "must presume that any and all issues were decided in favor of the
prevailing party." *See Hicks v. Capitol American Life Ins. Co.,* 943 F.2d 891, 895 (8th Cir.
1991). Moreover, defendants waived any objections to the lack of special interrogatories by
failing to raise them at the jury instruction stage. *See Cargill, Inc. v. Sears Petroleum & Transp.
Corp.,* 388 F.Supp.2d 37, 65, n. 19 (N.D.N.Y. 2005).

the public interest. Importantly, the jury found defendants' misappropriation was willful and malicious. [Dkt. #293, Answer to Special Interrogatory Nos. 4, 7]. Therefore, injunctive relief is appropriate. However, the type and duration of injunctive relief must be determined.

Skycam alleged at trial that Actioncam's aerial camera system incorporates 15 Skycam trade secrets.[3]

---

[3] The trade secrets are:

    a. Use of lasers and reflectors to complete or establish an aerial camera operating environment, to include the creation of boundaries, pulley locations and site surveys;

    b. Site surveys, field guides and other location specific data contained in Skycam information available to Mr. Bennett and/or contained in Skycam data obtained by Mr. Bennett and/or Actioncam at any time from the time of Mr. Bennett's employment to the present;

    c. Fifth line management techniques including use of an arbor and/or reel design to manage the control of the line;

    d. Single wrap reel design technology related to a fifth safety reel design including arbor and/or reel control designs to pull the camera and related equipment up and away in the event of a failure of any supporting lines;

    e. Larger, single-wrap reels for drive lines as designed by Loren Athens using, in significant part information, Skycam information;

    f. The Skycam obstacle avoidance system, including the creation of boundaries and geometric obstacles, as well as the linear time collision detection algorithm;

    g. The skimming feature of the Skycam obstacle avoidance system and as described in the Actioncam patent application;

    h. The Actioncam Generation I system presented at trial including the related motion control and stabilization technology;

    i. The Actioncam Generation II system involving use of the Filmotechnic camera head which was identified as an alternative to Mr. Bennett by a Skycam employee and further investigated by that employee and Mr. Bennett during his employment at Skycam;

Actioncam contends a prohibitory injunction with respect to the trade secrets would eliminate its ability to use its aerial camera system and put Actioncam out of business.[4]  The court concurs. A prohibitory injunction would eliminate competition and technological innovation in the aerial camera market—which has relatively few competitors—in derogation of the public interest.  Moreover, the imposition of a royalty is adequate to protect the parties' respective interests.  Therefore, the court finds that exceptional circumstances exist and concludes issuance of a royalty injunction is appropriate under § 87(B) of the OUTSA.

Skycam's expert, Greg Eschborn, testified it would have taken a company starting with access only to publicly available information three to four years to develop the Skycam aerial camera system.  [Greg Eschborn Testimony, 08/22/11, 1:46:00].  Plaintiff's expert, Brett Reed, testified a reasonable royalty for defendants' use of Skycam technology would be an initial

---

j.  The code, system and hardware for data for presentation (live and/or replay) of on field graphics such as the first and ten yellow line;

k.  Stabilized roll control and technology, algorithms and research and development related thereto;

l.  Simplified linear programming without significant matrix calculations for control of the Actioncam system;

m.  Skycam gross profit margin information;

n.  Information identified by Bennett in his emails, computer documents and other technical and financial information obtained by Bennett and others from Skycam from the time of Bennett's employment to the present; and

o.  Skycam documents, data and information in Actioncam's possession, on computer systems, hard drives, thumb drives and other storage locations.

[4] Actioncam also asserts a traditional injunction would not benefit Skycam, but rather its sister entity, Cablecam, because Cablecam rather than Skycam competes directly with Actioncam.  Nic Soloman, Skycam's President, testified that until September 2007, Skycam had an exclusive relationship with ESPN for football coverage.  Skycam's sister company, Cablecam, serviced Fox, CBS and NBC football accounts.  After September 2007, Skycam's relationship with ESPN was no longer exclusive. [Nic Soloman Testimony, 9:38:00-9:40:15].

payment of $1 million ($500,000 each for two systems), plus $5,000 per event. [Brett Reed Testimony, 08/25/11, 2:10:40]. Actioncam developed its first business plan in February of 2007, but did not actually begin covering paid events until August or September of 2009.

The court concludes September 1, 2009—approximately the date when the Actioncam aerial camera system entered the for-profit market in competition with Skycam—shall be the appropriate starting date for calculating a royalty injunction, and the appropriate length of the royalty injunction period is 3.5 years, or 42 months. This results in a cutoff date of March 1, 2013, for defendants' royalty obligations. The jury already considered and compensated Skycam for damages from defendants' trade secret misappropriation from September 1, 2009, through September 2, 2011, the date of its verdict. Thus, the court concludes Skycam is entitled to receive royalties of $5,000 per event for each paid event covered by Actioncam during the period of September 3, 2011, through February 28, 2013.

### III. Unfair Competition

Skycam alleged defendants violated the ODTPA, OKLA. STAT. tit. 73, § 54(A) and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by making false and/or misleading statements regarding (1) the speed and/or accuracy of the Actioncam system; (2) whether the Actioncam system is capable of supporting field graphics for a "First and Ten Line;" (3) whether the Actioncam system contains a fifth safety line providing a secondary supporting line with a power safety reel that can pull the camera up and out of the way in the event of failure of one or more of the main suspension cables; (4) other capabilities of the Actioncam system; and (5) other capabilities of the Skycam system. [Dkt. #292 at 35]. It sought damages and injunctive relief.

The court entered summary judgment in favor of Skycam on its claim that defendants'

representations concerning the fifth safety line violated the ODTPA and the Lanham Act, and

found the statement was literally false under the Lanham Act. [Dkt. #231 at 10-11]. The jury

was so instructed. [Dkt. #292 at 38]. Jurors were further instructed that they were to determine

whether any of the other representations violated the ODTPA and Lanham Act and what, if any,

damages Skycam incurred as a result of any misrepresentations. [Dkt. #292 at 38-39].

The jury returned a verdict finding both defendants violated the ODTPA and Lanham Act

and awarding damages of $180,000 in favor of Skycam. [Dkt. #293 at 3-4]. The verdict did not

specify which representations the jury found to be false or misleading, nor did it make specific

findings concerning whether the statements were literally false or merely misleading. [*Id.*].

Skycam now seeks an injunction prohibiting defendants from making false or misleading

statements concerning any of the five topics listed above. It also asks the court to order

Actioncam to place a corrective advertisement on the home page of the Actioncam website and

in any other public advertising for at least 18 months.

Defendants argue an injunction is inappropriate because (1) there is no proof of damage

to Skycam's reputation; (2) Skycam has already been compensated by the jury's damage award;

(3) the jury did not make specific findings as to the false representations; and (4) the scope of the

injunction sought by Skycam is overly broad.

Both the ODTPA and the Lanham Act authorize entry of injunctions precluding

deceptive trade practices. *See* OKLA. STAT. tit. 78, § 54(A); 15 U.S. § 1116(a). According to

well-established principles of equity, a plaintiff seeking a permanent injunction must establish:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *EBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

Irreparable harm is presumed in an unfair competition case if a statement is found to have been literally false or misleading. Under the Lanham Act, if an advertisement is found to be literally false, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *C.B. Fleet Co., Inc. v. Smithkline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 434 (4th Cir. 1997); *See also Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F.3d 302, 311 (1st Cir. 2002), *cert. denied,* 537 U.S. 1001 (2002); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586 (3rd Cir. 2002). As previously noted, where a verdict is general, a court "must presume that any and all issues were decided in favor of the prevailing party," *Hicks* 943 F.2d at 895, and defendants waived any objections to the lack of special interrogatories by failing to raise them at the jury instruction stage. *Cargill,* 388 F.Supp.2d at 64, n. 19. The court therefore presumes the jury concluded the statements at issue were either literally false or misleading and the jury—in awarding damages to Skycam—concluded Skycam's reputation was damaged. Furthermore, for the purposes of equity, this court finds and concludes that Actioncam's statements were false and misleading. Thus, the first requirement for injunctive relief—irreparable injury—is met.

With respect to the second requirement—inadequacy of remedies at law—the jury awarded Skycam damages for past injury, but its award could not and did not address future injury to its reputation. As stated in *Century 21,* 346 F.2d at 1180, there is no adequate remedy at law for defendants' ongoing misrepresentations.

With respect to the third factor—the balance of hardships—the court finds the continuing harm to Skycam from defendants' misrepresentations weighs more heavily than the harm to defendants of an injunction.

With respect to the fourth factor, the court finds public interest is served by an injunction barring defendants from making misstatements about the relative merits of the aerial camera systems. As a result, the court concludes entry of an injunction is appropriate under both the ODTPA and the Lanham Act.

Therefore, the court concludes Skycam is entitled to injunctive relief, as follows:

1. Defendants are enjoined from making any false or misleading reference, direct or indirect, to Skycam's capabilities in any advertisement, promotion, presentation, website, publication, or statement to potential or actual customers.

2. Defendants are enjoined from making any false or misleading claim, directly or indirectly, in any advertisement, promotion, presentation, website, publication, or communication to potential or actual customers that the Actioncam system (a) has an operational fifth safety line with a power safety reel that can pull the camera up and out of the way in the event of failure of one or more of the main suspension cables, and/or (b) is superior in safety to Skycam or other systems.

3. Defendants are enjoined from making any false or misleading claims, either directly or indirectly, in any advertisement, promotion, presentation, website, publication, or communication to potential or actual customers regarding its speed or positional accuracy that (a) is not independently verified through replicable field testing, and/or (b) makes any reference to Skycam, LLC.

4. Defendants are enjoined from making any false or misleading claims, either directly or indirectly, in any advertisement, promotion, presentation, website, publication, or communication to potential or actual customers regarding the ability to provide onscreen graphics that (a) cannot be verified through replicable field testing, and/or (b) makes any reference to Skycam, LLC.

5. Defendants are required to place a quarter screen sized corrective advertisement on the home page of the Actioncam website and in any other public advertising, in a legible font and color for a period of at least 6 months.  The advertisement must correct Actioncam's previous false statements and will be subject to this court's approval.

## IV. Conclusion

For the foregoing reasons, Skycam's Application for Injunction [Dkt. #305] is granted.

IT IS SO ORDERED this 27th day of September, 2012.


GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT