**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

SKYCAM, LLC, a Delaware limited liability )
company, and SKYCAM, LLC, an Oklahoma )
limited liability company, )
                                               )
                    Plaintiffs, )
                                               )
v. )                   Case No. 09-CV-294-GKF-FHM
                                               )
PATRICK J. BENNETT, an individual, and )
ACTIONCAM, LLC, an Oklahoma limited )
liability company, )
                                               )
                   Defendants. )

## OPINION AND ORDER

Before the court is the Motion for New Trial filed by defendants Patrick J. Bennett ("Bennett") and Actioncam, LLC ("Actioncam"). [Dkt. #369]. Defendants assert there were numerous errors that warrant retrial.

### I. Background/Procedural History

The parties manufacture competing aerial camera systems for use in the broadcast of sporting events. Skycam sued Bennett, a former Skycam employee, for breach of a separation agreement that prohibited him from using or disclosing Skycam's trade secrets and confidential or proprietary information. Skycam also asserted federal and state claims of misappropriation of trade secrets and unfair competition/false advertising against Bennett and his company, Actioncam. Additionally, it claimed an ownership interest in defendants' pending patent applications based on an "employed to invent" theory.

The breach of contract, trade secret misappropriation, and unfair competition claims were tried to a jury. The jury returned a verdict in favor of Skycam as follows:

- The jury found in favor of Skycam and against Bennett on the breach of contract claim and awarded Skycam $100,000 in damages;

- The jury found in favor of Skycam against Bennett and Actioncam on Skycam's claim for misappropriation of trade secrets, and awarded Skycam $239,000 in damages;

- The jury found in favor of Skycam and against Bennett and Actioncam on Skycam's claim for unfair competition and awarded Skycam $180,000 in damages;

- The jury awarded punitive damages of $75,000 against Actioncam.

Subsequently, upon motion by Skycam, the court entered an injunction requiring defendants to pay royalties to Skycam for their use of the misappropriated trade secrets, prohibiting them from making false or misleading statements concerning the respective capabilities of the Actioncam system and the Skycam system and requiring them to do corrective advertising.  [Dkt. #347 at 10-11].  After a nonjury trial, the court found in favor of defendants and against Skycam on its patent ownership claim.  [Dkt. #348].

## II. Motion for New Trial

Defendants allege the following bases for new trial:

A. The court erred in awarding Skycam a royalty;

B.  Jury verdicts in favor of Skycam on its trade secret misappropriation, breach of contract, Lanham Act/ODTPA, and punitive damage claims were against the weight of the evidence;

C. The court erred in granting summary judgment in favor of Skycam on its Lanham Act/ODTPA claim with respect to defendants' Fifth Line statements; the Lanham Act/ODTPA jury instructions were improper and the court erred in granting injunctive relief on the false advertising claims;

D. The court erred in the following rulings on admissibility of evidence:

2

- the court improperly admitted testimony of Skycam expert witnesses Mike Williams, Greg Eschborn and Brett Reed;
- the court improperly admitted several exhibits Skycam had failed to adequately identify, including PST files and screen shots from two CD's;
- the court improperly refused to admit a redacted exhibit which would have shown that Skycam was using the lawsuit to keep Actioncam out of the aerial market;
- the court improperly admitted Actioncam business plans;
- the court improperly refused to permit defendants to elicit testimony from Jim Wilburn about the asset purchase agreements for the transfer of CF Inflight assets to Skycam LLC and subsequent transfer to Skycam, Inc.;
- the court improperly refused to permit defendants to cross examine Skycam's expert, Reed, on the "Deloitte Report."

E. The court erred in failing to instruct the jury on an employee's right to use his experience to compete with his former employer.

## A. Royalty Injunction

The court entered an injunction requiring defendants to pay Skycam royalties of $5,000 per event for each paid event covered by Actioncam during the period from September 3, 2011, through February 28, 2013. [Dkt. #347 at 7]. Defendants argue imposition of a royalty injunction was improper and alternatively, the method the court used to calculate the royalty award was erroneous.

The court rejects defendants' argument that a royalty injunction was improper. The Oklahoma Uniform Trade Secret Act ("OUTSA") expressly permits imposition of a reasonable royalty. *See* 78 Okla. Stat. § 87(B). Skycam established the elements required to obtain a permanent injunction. *See Southwest Stainless, LP v. Sappington,* 582 F.3d 1176, 1191 (10th Cir. 2009) (Party seeking a permanent injunction must prove "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."). The court further found—as urged by defendants—that a prohibitory injunction with respect to trade secrets would eliminate its ability to use its aerial

camera and put it out of business.  Therefore, it concluded that exceptional circumstances exist and issuance of a royalty injunction rather than a prohibitory injunction was appropriate under § 87(B) of the OUTSA.

Based on testimony by Skycam's experts, the court determined defendants obtained a 42-month head start on development of Actioncam by using Skycam's technology.  Actioncam developed its first business plan in February of 2007, but did not actually begin covering paid events until August or September of 2009.  The court concluded that $5,000 per event was a reasonable royalty during the 42-month head start; September 1, 2009 was the appropriate starting date for calculating the duration; the jury's damage award for misappropriation covered the period of September 1, 2009 through the date of the verdict, September 2, 2011; and Skycam was entitled to receive the $5,000 per event royalty from September 3, 2011 through February 28, 2013.  [Dkt. #347 at 6-7].

Defendants argue the entire 42-month head start expired before September 2011 and therefore, no royalty injunction was warranted.  In so arguing, defendants contend the appropriate start date for the 42-month period was May 2007—when development of Actioncam began—rather than September 1, 2009, when Actioncam entered the market.  Defendants' argument depends, however, on an erroneous construction of the testimony of plaintiff's expert, Eschborn.  They contend Eschborn testified development of Actioncam would have taken a *total* of three to four years. But Eschborn testified:

> Q.      . . . In your opinion, could you and other engineers working with you, using only public information and nothing that was confidential or proprietary from another company, have developed the Actioncam aerial system in the time it was done by Actioncam?
>
> A.      No.

* * *

4

Q.      *And how much longer do you—in your opinion, would it take to do that than was done by Actioncam?*

* * *

A.      *Three to four years.*

[Dkt. #353 at TR 43:19-44:10 (Eschborn) (emphasis added)].   Clearly, Eschborn testified development of Actioncam would have taken three to four *more* years than the time it actually took Actioncam to develop the system.

The court rejects defendants' argument that the proper start date for the royalty injunction was May 2007.

## B. Whether the Jury's Verdicts Were Against the Weight of Evidence

Defendants argue the jury's verdicts in favor of Skycam on its claims for breach of contract, trade secret misappropriation, unfair competition, and punitive damages were against the weight of the evidence.

The district court should grant a motion for new trial based on insufficiency of evidence "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009). *See also M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) ("If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."). Further, "courts of appeals routinely affirm the denial of such new-trial motions once they have upheld the sufficiency of the evidence." *Cesareo-Ayala,* 576 F.3d at 1126.[1]

---

[1] In this regard, during trial the court denied defendants' Rule 50 motion after plaintiff rested and again when it was re-urged at the close of evidence.  [Dkt. #291 at 2-3].  Post-trial, the court denied defendants' Motion for Judgment as a Matter of Law.  [Dkt. ##306, 321].  In each instance, the court found the evidence at trial provided sufficient bases for the verdicts.

## 1. Trade Secrets

Defendants assert Skycam presented insufficient evidence to establish the Skycam technology and information at issue comprised "trade secrets."   However, as the court concluded in its previous rulings on defendants' Rule 50 motions and the Motion for Judgment as a Matter of Law, Skycam presented ample evidence supporting such a conclusion.  Williams testified extensively as to the trade secret characteristics of various Skycam technologies, including its Obstacle Avoidance System and the linear, non-matrix programming for the two point LX system.  Mike Streapy testified about Skycam's research and development work on a gyro-stabilized camera head for an aerial camera system to provide roll axis stability.  Tom Landsman testified that Skycam's survey techniques were not generally known or readily ascertainable. Actioncam's own employee, Ron Burden, testified that after using Skycam's field guide to draft Actioncam's field guide, he threw the Skycam field guide away because he did not believe he should have it.   The testimony of Nic Salomon and Jim Wilburn supported a conclusion that Skycam's financial information, including profit margins, was confidential and proprietary.

Defendants also argue that in refusing to allow them to move for judgment separately on each of the 44 trade secrets alleged by Skycam, the court "effectively permitted the jury to assume that Plaintiff (1) had offered sufficient evidence to potentially support 44 trade secrets, and (2) that a question existed as to whether Defendants misappropriated each of these trade secrets." [Dkt. 369 at 12-13].  The court rejects this argument.  Plaintiff asserted one claim for misappropriation and supported it by introducing evidence of 44 items it alleged were trade secrets.  As earlier stated by the court, Rule 50 does not permit parsing of a single claim into 42 or 44 parts, as urged by defendants.  Rather it only allows the court to grant a motion for judgment as a matter of law against a party on a single "claim or defense that, under the

6

controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(B); *See* Dkt. #308, TR at 4:21-6:21; 82:22-83:19. Further, the jury was instructed that in order to prevail on its trade secret misappropriation claim, Skycam must prove that defendants misappropriated one or more trade secrets, and the term "trade secret" was defined. [Dkt. #292 at 27, Jury Inst. No. 22]. Finally, defendants did not seek a special interrogatory requiring the jury to make an individual determination with respect to each of the 44 alleged trade secrets, and thus waived the objection.

### 2. Breach of Contract

As in their previous motions, defendants contend Skycam offered insufficient evidence that Bennett disclosed Skycam's confidential information in violation of his Separation Agreement or that Skycam was damaged thereby. Further, they argue Skycam presented no proof of recoverable damages.

### a. Disclosure of Confidential Information

As set forth in Section B.1. above, the court previously concluded Skycam presented sufficient evidence to submit Skycam's misappropriation claim to the jury. Based on the same evidence, submission of the breach of contract claim was also proper.

### b. Damages

The amount of damages awarded is "within the sole province of the jury," and an award "may not be disturbed unless it is completely without support in the record." *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1281 (10th Cir. 2005).

Skycam advanced three separate theories for recovery of damages for breach of the Separation Agreement: lost profits, unjust enrichment, and a reasonable royalty. [Dkt. #267, Pretrial Order at 6, 177]. During trial, Skycam introduced evidence pertaining to all three

theories.  Specifically, Skycam's damages expert, Reed, opined about lost profits based on

Skycam's loss of the ESPN contract.  He also testified defendants benefited from reduced

development costs and time due to their access to Skycam's confidential information.  In support

of the "reasonable royalty" theory, Salomon and Reed testified regarding the number of events

defendants had covered, the price of such events, and how much Skycam would have charged for

a license to use the technology at issue.

Defendants argued as part of their Rule 50 motion that they were entitled to judgment on

the breach of contract claim because Skycam had not proven actual damages.  During argument,

counsel for defendants acknowledged Skycam asserted claims for lost profits, unjust enrichment,

and a reasonable royalty; however, his argument focused exclusively on lost profits.  [Dkt. #312-

1, TR at 69:22-82:19].  The court, in denying the motion, found a legally sufficient evidentiary

basis upon which the jury could award lost profit damages for the plaintiff.  [*Id.* at 82:13-19].

The court instructed the jury that if it found for Skycam on the breach of contract claim, it must

fix the amount of damages, which would be "the actual loss to Skycam as a direct result of

Bennett's unauthorized disclosure of confidential and proprietary information" and could include

Skycam's net lost profits.  [Dkt. #292 at 25, Jury Inst. No. 20].  The jury found for Skycam on

the claim, awarded damages of $100,000, and responded to a special interrogatory that the award

was not for lost profits.

Post-trial, defendants argued, both in their Motion for Judgment as a Matter of Law [Dkt.

#306] and their pending motion, that neither unjust enrichment nor a reasonable royalty can be

considered "actual damages," and since the jury award was not for lost profits, there was no

evidence of "actual damages."  Further, they assert that if the jury awarded damages for unjust

enrichment, then the award was duplicative of the damage award for misappropriation.

The court rejects these arguments for three reasons.  First, defendants moved for judgment as a matter of law *solely* on the basis that Skycam failed to prove lost profits and *not* as to unjust enrichment or the reasonable royalty theories.  [Dkt. #312-1, TR at 69:22-82:19].  Therefore, they waived the argument with respect to the other two theories.  Second, defendants failed to request specific findings from the jury as to apportionment of damages between the two theories, and as a result, have waived any argument concerning the issue.  *See Merrill v. Beaute Vues Corp.,* 235 F.2d 893, 897 (10th Cir. 1956); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1110 (9th Cir. 2001) (failure to raise argument regarding apportionment of damages until after jury was discharged waived argument of duplication of damages).  Third, the testimony of Reed and Salomon was sufficient to support a jury verdict for damages for unjust enrichment, a reasonable royalty or a combination of the two, and both are appropriate measures of damages.  *See generally* Louis Altman & Malla Pollock, Callman on Unfair Competition, Trademarks and Monopolies, § 14.42 (4th ed. 2007).  *See also Celeritus Tech., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1359 (Fed. Cir. 1998) (finding plaintiff's damages for breach of nondisclosure agreement properly included unjust enrichment calculated as the fee defendant would have paid for a license).

Thus, the jury's verdict on Skycam's breach of contract claim was not against the weight of the evidence.

### 3. Lanham Act/ODTPA

Defendants argue they are entitled to judgment on the unfair trade practices claim because Skycam failed to demonstrate a causal connection between its false advertising and

harm to Skycam, and also failed to provide evidence of dissemination to customers, as required by the Lanham Act.[2]

The court rejects these arguments.  Salomon and Wilburn's testimony established Skycam was harmed by false advertising because it showed that ESPN's October 2007 reversal on a business deal was the direct result of defendants' false statements about the relative capabilities of the Skycam and Actioncam systems.  This evidence was corroborated by Reed, who reviewed and ruled out numerous other possible explanations.

Additionally, Skycam presented evidence that literally false statements were made to customers.  Specifically, early business plans containing false statements were used in defendants' sales efforts; Burden testified that flyers containing allegedly false and misleading statements were created in May 2007 and distributed to potential customers; Bennett admitted he prepared the emails containing allegedly false statements regarding Actioncam's capabilities to potential customers Bob Lanning of the Big Ten Network and Ken Ellett at Broken Arrow High School.  [PX 567; PX 512].  Actioncam employee Jacque Smauder testified that she regularly used statements from the business plans in press releases circulated in the industry.  [PX 5, PX 78, PX 81-83, PX 91, PX 98].  Skycam also introduced evidence that the allegedly false statements reached customers, including one individual who sent an email attempting to verify defendants' claims regarding speed and accuracy.  [PX 562].  Additionally, Skycam produced evidence that false statements have been and continue to be displayed on defendants' website, a medium specifically targeting customers.

The jury's verdict on Skycam's unfair competition claim was not against the weight of the evidence.

---

[2] In contrast to the Lanham Act, the ODTPA does not require evidence of dissemination to customers.  Thus, even if Skycam failed to present evidence of dissemination, its claim would still be viable under the state statute.

**4. Punitive Damages**

Defendants contend the evidence did not support an award of punitive damages.

Defendants failed to raise this issue in their earlier motion, and therefore have waived it.

However, even assuming the argument has not been waived, defendants' objection is without

merit.  Skycam presented evidence that before Bennett left Skycam, he secretly created a backup

of Skycam's design specifications and discussions, computer code, and a near-complete library

of Skycam internal confidential data, taking this information with him when he departed.  Thus,

the jury's finding that defendants' conduct warranted punitive damages is not against the clear

weight of the evidence.

**C. Lanham Act/ODTPA**

**1. Literal Falsity of Fifth Line Statements**

Defendants assert the court erred in granting summary judgment against them on

Skycam's claim of unfair competition with respect to representations about Actioncam's Fifth

Line, and in instructing the jury that their statements regarding the Fifth Line were literally false.

In its order granting summary judgment, the court determined that defendants made three

statements about the Fifth Safety Line which were literally false.  [Dkt. #231, Order, at 10-11].[3]

Defendants argue that the court erred in determining the statements were literally false and

---

[3] Those statements were (1) an Actioncam advertisement which stated: "Actioncam now has the safest, most secure, and reliable camera in the industry due to a fully computer controlled fiber/power/support cable which provides a secondary support line in case any one or more of the main support lines fail.  This method provides true, fail-safe redundancy, which is exceptionally advanced and one of a kind in this industry."  [Dkt. #114-23]; (2) an October 22, 2008, email from Bennett to a potential customer transmitting a description of the Actioncam system.  [#115-24].  The description states that a "fifth interface/safety cable . . . provides low voltage power and redundant fiber optic lines for full HD video and control Signals.  It also includes a high strength (Kevlar) member that allows it to secure the camera above the field in case of a failure of any one or more of the main suspension cables.  This provides for the only truly redundant safety cabling system in the industry."  [*Id.*]; and (3) a June 11, 2008, article in the Journal Record quoting Bennett and stating that, "technology and service distinguishes Actioncam from the competition.  Actioncam engineers have constructed a power safety reel so if there is ever a problem in the system the safety reel pulls the camera up and out of the way."  [Dkt. #114-25].

contend that at most, they were "ambiguous."  They cite Bennett's affidavit, which they claim creates a material issue of fact about whether the statements were literally false.

The court disagrees.  In his affidavit, Bennett stated:

> The fifth line employed in the Actioncam System and described in the Actioncam Patent Application ("Fifth Line") is a communication cable that transmits data and is operated by a fifth reel as well as a safety line that can hold up to 300 lbs of weight.  However, while the Fifth Line will support the camera, which weighs approximately 63 lbs, the computer system does not yet have the capability of communicating with the fifth reel regarding the safety feature (but it communicates with the fifth reel regarding all other functions of the Actioncam System).  *Thus, an additional safety feature of the Fifth Line and reel is not integrated into the computer system of the Actioncam System, that is, the capability of automatically reeling in" the camera in the even another cable breaks.*  Stated otherwise, if any of the cables to the Actioncam System broke, the Fifth Line would support the camera, which is a safety feature; only the capability of the fifth reel "knowing" to reel in the camera in the event the other cables break has been designed, but not tested as a safety feature yet.

[Dkt. #128-8 at 4, ¶17, Bennett Aff.] (emphasis added).  Thus, by Bennett's own admission, while the Fifth Line on the Actioncam system was capable of supporting the camera in the event other cables broke, it did not—at the time of the advertisements at issue—have the capability of reeling the camera up and out of the way.  The court rejects defendants' argument that their statements about the Fifth Safety Line were not literally false.

For the same reasons, the court rejects defendants' argument that the jury was improperly instructed that their statements regarding the Fifth Line were literally false.

## 2. Lanham Act/ODTPA Jury Instructions

Defendants assert the court's jury instructions on the unfair competition claims were erroneous in two respects:  (1) the Lanham Act instruction was inappropriate because Skycam did not produce evidence of dissemination to customers; and (2) the combination of the Lanham Act and ODTPA jury instructions in Jury Instructions 28-31 rendered the instructions prejudicially confusing.

12

"To preserve a challenge to a jury instruction, a party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." *Thierrien v. Target Corp.,* 617 F.3d 1242, 1252 (10th Cir. 2010) (citation omitted); *see also* Fed. R. Civ. P. 51(c)(1) and (d)(1).  Under Rule 51(d)(2), the court may consider a plain error in the instructions that has not been preserved if the error affects "substantial rights."  Under the "plain error" standard, a court will reverse only where the error was "patently plainly erroneous and prejudicial." *Giron v. Corr. Corp. of America,* 191 F.3d 1281, 1289 (10th Cir. 1999).  The party claiming plain error has "the heavy burden of demonstrating fundamental injustice." *Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir. 1999).

Defendants objected to only one of the instructions at issue, arguing that proof of materiality of the false statement is required even if the statement is proven literally false.  [Dkt. #381-8, TR at 41:12-45:15].  The court agreed with counsel for defense and made the requested change in Jury Instruction No. 28.  [Dkt. #292 at 35-36, Jury Inst. No. 28].  Thus, the "plain error" standard of review applies to the current challenges.

The court rejects defendants' argument that there was no proof of dissemination.  As discussed in Section B.3. above, Skycam presented evidence that false and misleading statements were made to customers.  With respect to the combined instruction, although defendants submitted separate proposed instructions on the ODTPA and Lanham Act, they did not object to the court's instruction on that basis.  [Dkt. #381-8, TR at 25-52].  Therefore, under Rule 51(d), the court may only consider the alleged error if it affected substantial rights.  Jury instructions are proper when they "accurately inform the jury of the governing law." *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1173 (10th Cir. 2000).  Skycam's trade secret misappropriation

claim asserted violations of both the ODTPA and the Lanham Act, and Instruction No. 28 accurately instructed the jury on the elements of each statute.  Defendants have not established the instruction affected any substantial rights. As a result, their post-trial objection to the combined instruction is overruled.

### 3. Granting of Injunction

Defendants argue that the court erred in granting a permanent injunction prohibiting all misleading statements because (1) there is no reason to assume the jury found any statements other than those relating to Fifth Line system in violation of the ODTPA or the Lanham Act; and (2) there is no reason to conclude the jury found any statement literally false so as to relieve Skycam of its burden to establish irreparable harm.  The court rejects this argument.  As noted in the order granting a permanent injunction, where—as here—a jury verdict is general, a court "must presume that any and all issues were decided in favor of the prevailing party." *See Hicks v. Capitol American Life Ins. Co.*, 943 F.2d 891, 895 (8th Cir. 1991).  Further, defendants waived any objections to the lack of special interrogatories by failing to raise them at the jury instruction phase.  *See Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 65, n. 19 (N.D.N.Y. 2005).

The court also rejects defendants' argument that the injunction is overbroad or fails to meet the specificity requirements of Fed. R. Civ. P. 65.  Rule 65(d)(1)(B) requires that every order granting an injunction must state its terms specifically.  The court's order specifically set out the four categories of statements defendants are prohibited from making.  [Dkt. #347 at 10-11].

### D. Admissibility of Evidence

Defendants argue the court erred in its rulings on a number of evidentiary issues,

resulting in substantial prejudice warranting new trial.  Alternatively, they assert even if the

errors were harmless when considered individually, the cumulative effect of the errors resulted in

prejudice to them justifying a new trial.[4]

### 1. Testimony

### a. Mike Williams

Mike Williams testified that certain Actioncam components incorporated Skycam's

confidential technology.  Defendants contend this testimony was nothing more than *ipse dixit*

guesswork because Williams did not examine the Actioncam system.  The court rejects

defendants' contention.  Williams' opinion was based on his review of the Actioncam system

patent application that disclosed Skycam's trade secrets, public information concerning the

Actioncam system, and an inspection of the Actioncam system set up at the Tulsa Union High

School stadium.  These observations, coupled with his extensive experience in the aerial camera

industry, were sufficient to overcome defendants' assertion that Williams' testimony was

inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

### b. Greg Eschborn

Defendants also contend Skycam expert witness Greg Eschborn was not qualified to

testify concerning automated motion control aspects of the Skycam and Actioncam systems,

whether particular components of the Skycam system were "trade secrets," or how long it would

take a company to develop an aerial camera system without using Skycam's alleged trade

secrets.  They argue that Eschborn, who sells and installs motion control devices, may have been

---

[4] The court, having concluded its evidentiary rulings were proper, does not address defendants' cumulative effect argument.

qualified to testify regarding the motors in the competing aerial camera systems but lacked experience that would qualify him to testify regarding any other aspect of the systems.

Under Rule 702 of the Federal Rules of Evidence, a witness may be qualified to testify as an expert based on his knowledge, skill, experience, training or education. Fed. R. Evid. 702. The court previously found that Eschborn's education and work experience satisfied *Daubert* requirements;[5] his methodology met *Daubert* standards for admissibility; and shortcomings in his qualifications and methodology would be explored on cross examination and went to the weight of his opinions rather than admissibility. [Dkt. #235 at 10].

At trial, Eschborn identified which components or pieces of information concerning the Skycam system were well known in the industry and which were trade secrets. He reviewed the Skycam patent and investigated operational aspects of other aerial camera systems including Actioncam, Spydercam, and Cablecam. Defendants had ample opportunity, on cross examination, to challenge his qualifications and reliability.

Thus, the court rejects defendants' argument that Eschborn was unqualified to testify as an expert.

### c. Brett Reed

Defendants assert the court erred in permitting Skycam to use demonstrative exhibits PX 688, PX 689, PX 698, PX 702, and PX 714 during testimony by Brett Reed, Skycam's damages expert. Defendants characterize the demonstrative exhibits as summaries of Skycam's claims "presented as evidentiary facts rather than the ultimate issues solely for the jury to decide." [Dkt. #369 at 28].

---

[5] Eschborn has B.S. in mechanical engineering and an M.B.A. He is owner and president of MotionWorx Corporation, a system integrator engaged in the sales, commission and installation of automation hardware and software with a specialty in motion control. He has designed and installed systems utilizing many parts of both the Actioncam and Skycam systems. He has "extensive experience with encountering and solving the time consuming problems that inevitably occur when assembling components in a complex system." [Dkt. #122-2 at 2].

The court rejects defendants' argument.  The challenged exhibits were demonstrative exhibits and were not admitted into evidence.  Further, under Rule 704 of the Federal Rules of Evidence, "an opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  Additionally, "an expert may disclose facts or data he relied upon in forming his opinion if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  The court, after hearing defendants' objection to the demonstratives, found the probative value of the underlying data outweighed any prejudicial effect and overruled defendants' objections.  Counsel for defense was permitted to, and did, cross examine Reed extensively concerning the accuracy of his underlying assumptions.  Further, the court gave the jury a limiting instruction concerning Reed's demonstrative exhibits.  *See* Jury Instruction No. 13.

Defendants also contend Reed's testimony was improper because he accepted as true Eschborn's testimony about how long it would have taken Actioncam to enter the market had it not used Skycam trade secrets and confidential information. The court, having found that Eschborn's testimony was properly allowed, rejects defendants' argument that Reed's reliance on Eschborn's testimony was improper.  And, as noted above, Reed was extensively cross examined regarding his underlying assumptions.

## 2. Exhibits

Defendants challenge the court's rulings on the admissibility of a number of exhibits.

### a. PST Files/Screen Shot of CD

Defendants argue PX 38 should have been excluded because Skycam failed to disclose the exhibit with sufficient particularity, in contravention of Rule 26(a)(3).  Further, they contend

PX 814, PX 815, PX 816, PX 819, and PX 820 should have been excluded because Skycam had

not previously identified them at all.[6]

Rule 26(a)(3) provides, in pertinent part:

**(3) Pretrial Disclosures:**

**(A)** *In General.*   In addition to the disclosures required by Rule 26(a)(1)
and (2), a party must provide to the other parties and promptly file the
following information about the evidence that it may present at trial *other
than solely for impeachment*:

* * *

**(iii)** an identification of each document or other exhibit, including
summaries of other evidence—separately identifying those items
the party expect to offer and those it may offer if the need arises.

Fed. R. Civ. P. 26(a)(3)(a) (emphasis added).   The Advisory Committee Notes on this provision

state in pertinent part:

Subparagraph (C)[7] requires disclosure of exhibits, including summaries (whether
to be offered in lieu of other documentary evidence or to be used as an aid in
understanding such evidence), that may be offered as substantive evidence.   The
rule requires a separate listing of each such exhibit, though it should permit
voluminous items of a similar or standardized character to be described by
meaningful categories.

Fed. R. Civ. P. 26 Advisory Committee Note, 1993 Amendments.

PX 38 was listed in the Pretrial Order as "Photographs from Bennett CDs."  [Dkt. #267,

Pretrial Order at 18].  The exhibit was a set of 354 photographs of the Skycam system located on

the hard drive of defendant Bennett's Skycam computer.  The court finds Skycam's disclosure of

the exhibits complied with Rule 26(a)(3)(A)(iii), which permits "voluminous items of a similar

or standardized character to be described by meaningful categories."  Fed. R. Civ. P. 26

Advisory Committee Note, 1993 Amendments.  Further, defendants have identified no prejudice

resulting from the method of disclosure.

---

[6] Defendants also complain about PX 36, PX 37, PX 45, PX 292, and PX 293.  However, none of these exhibits
were admitted at trial.
[7] Now Fed. R. Civ. P. 26(a)(3)(A)(iii) (2010).

The remaining exhibits at issue—PX 814, PX 815, PX 816, PX 819, and PX 820—were not separately listed on the Pretrial Order.  However, they are individual excerpts from PX 292, which is listed.  PX 292 is comprised of the contents of the "My Documents" section of defendant Bennett's Skycam computer, which Skycam copied and provided to Bennett at his request after he left Skycam.[8]  PX 292 was listed in the Pretrial Order as "Bennett's Outlook pst files from 2 CD's of files requested by Bennett on 1/4/06."  [Dkt. #267 at 37].  The PST files contained more than 61,000 pages of emails.  PX 814, PX 815, and PX 816 were identified on August 17, 2011—the third day of trial—as being part of PX 292, and the court admitted them, but instructed Skycam to identify all exhibits it intended to use from PX 292 by the following day.[9]  Skycam did not identify PX 819 and PX 820 until August 23, 2011, during the second week of trial.   PX 819 and PX 820 are screenshots showing metadata from the CDs of the "My Documents" section copied by Skycam for Bennett.  PX 819 and 820 were used on cross examination of Bennett to impeach his testimony that he did not create the PST File on the date of his termination for purposes of retaining Skycam's proprietary information.

Defendants complain that Skycam "blindsided" them and "effectively hid its most persuasive evidence until it had a witness on the stand at trial by identifying every document produced on one of six CD's comprised of hundreds of thousands of pages as a single exhibit."  [Dkt. #369 at 31].

The court rejects defendants' argument.  Rule 26(a)(3)(A)(iii) permits summaries of voluminous items of a similar nature, and PX 292 was aptly described as "Bennett's Outlook pst

---

[8] Skycam contended Bennett copied the entirety of his Microsoft Outlook mailbox—which contained Skycam trade secrets and confidential information—and placed it in a personal folder in the "My Documents" section of his computer, where it was surrounded by family photographs, music files, and internet bookmarks.  After he was terminated, he requested the "My Documents" section of his computer be copied and delivered to him, which Skycam did, based on Bennett's representation that it included only personal files.
[9] PX 814-PX 816 contained the LX System Code.

files from 2 CD's of files requested by Bennett on 1/4/06."  Furthermore, the PST files were in defendants' possession before the lawsuit was ever filed.  Most importantly, however, the exhibits at issue were used on cross examination of Bennett to impeach his testimony that he took no proprietary documents from Skycam, and thus fall outside the requirements of Rule 26(a)(3)(A)(iii).

Thus, the court concludes that PX 38, PX 814, PX 815, PX 816, PX 819, and PX 820 were properly admitted.

### b. Defendants' Exhibit 183

During trial, defendants attempted to introduce DX 183, an email in which Nic Salomon, upon learning of an Actioncam business victory, stated, *inter alia*, "we need to keep up the pressure on the lawsuit."  The court sustained Skycam's objection pursuant to Rule 403 of the Federal Rules of Evidence.  Defendants argue the statement was probative of their theory that Skycam wrongfully sued Actioncam to keep it out of the aerial camera market.  Therefore, they assert the court should have admitted the unredacted exhibit.

Rule 403 provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  Fed. R. Evid. 403.  Salomon's statement was of limited probative value.  It was written after commencement of the lawsuit, and Salomon did *not* state that Skycam's claims were groundless or aimed at wrongfully driving Actioncam out of the business.  To the contrary, Salomon and other Skycam representatives testified uniformly that they believed defendants had gained an unfair advantage by stealing Skycam trade secrets.  The potential for unfair prejudice to Skycam clearly exceeded the limited probative value of the statement, and the exhibit was thus properly excluded under Rule 403.

### c. Business Plans

Defendants argue the court erred in admitting PX 105, PX 106, PX 111, PX 113, PX 116, PX 119, PX 123, PX 127, PX 129, and PX 130, all of which were Actioncam business plans or executive summaries prepared over the course of three years.  Defendants failed to object to admission of PX 106, PX 111, PX 113, PX 116, PX 123, and PX 127; therefore, the court considers only the objections to PX 105 (February 2006 Business Plan), PX 119 (August 2008 Executive Summary), PX 129 (July 2009 Business Plan), and PX 130 (September 2009 Business Plan).

Defendants assert the documents should not have been admitted because Skycam failed to establish they were disseminated, and thus there was no basis for a finding of false statements under the ODTPA.  However, as discussed in Section B.3. above, Skycam introduced evidence of dissemination.  Additionally, it produced evidence establishing that, even if the documents were not disseminated, the same false statements contained in the business plans had been communicated to others.  Finally, the business plans were relevant for other purposes.

For example, PX 105 contains a still photo of an animation that was a trade secret of Skycam and stated that Actioncam would be using a gyro-stabilized camera head, another Skycam trade secret.  PX 119 states that Bennett began designing the Actioncam system in January 2006, refuting his claim that he was not heavily involved in the development of the system.  Further, it states that Actioncam had "completed the design, engineering and manufacturing of the first system and has recently completed the first field trials," which is relevant to Skycam's argument that defendants obtained a head start as a result of using Skycam's trade secrets.  The exhibit also contains gross profit information Skycam claimed had been misappropriated.  PX 129 includes statements about Actioncam's cost per event, which

relate to Actioncam's net profits, and it refers to Skycam as a competitor, refuting Actioncam's claim that it was not a competitor until it actually entered the market.  PX 130 also contains information regarding the date Actioncam system was completed, an acknowledgment that it contained components Skycam claimed were trade secrets, and gross sales, all of which are relevant to the action at hand.

Thus, the court concludes the business plans and executive summaries were properly admitted.

### d. Asset Purchase Agreements

During trial, defendants attempted to elicit testimony from Jim Wilburn regarding the asset purchase agreements that transferred CF Inflight's assets to Skycam LLC and subsequently to Skycam, Inc.  The court sustained Skycam's objections to this testimony on the grounds of relevance, having previously entered an order addressing ownership of the claims at issue.  [Dkt. #257 at 10-11].  Defendants contend the court erred in excluding the testimony because "the language contained in the agreements was relevant to the issue of whether the companies considered ownership of a trade secret."  [Dkt. #369 at 34].

The court disagrees.  In its Opinion and Order ruling on ownership of the claims, the court determined that the 2009 APA "intended to assign causes of action, contract rights, trade secrets and intellectual property rights to OCH and ultimately, to Skycam, Inc."  [Dkt. #257 at 7-8].  Further, the court found that Salomon, who had worked on the 2006 acquisition of Skycam LLC by Winnercom, considered Skycam LLC to have proprietary information and trade secrets prior to the 2009 acquisition by the Outdoor Channel.  This included information about stabilization of Skycam's camera systems and work being done on a potential roll axis; Skycam's LX or two-point Skycam system and work surrounding how to manage the cable;

Skycam's creation of a simpler surveying method; and Skycam adjusting its capabilities with television networks to support and integrate 1st and 10 graphics. [*Id.* at 9].

Further, it does not appear defendants made an offer of proof on this issue.

Defendants' argument that Skycam and its related entities never considered ownership of a trade secret is without merit, and thus the testimony defendants sought to elicit from Wilburn was properly excluded.

### e. Deloitte Report

During cross examination of Reed, defendants attempted to elicit testimony concerning a report drafted by Deloitte Financial Advisory Services in connection with the January 12, 2009, acquisition of Winnercom, Inc. Defendants contend the report "assigned no value to trade secrets or intellectual property, thus indicating that Plaintiff had no information it considered to be a trade secret." [Dkt. #369 at 36]. The court sustained Skycam's objection to the testimony. [Dkt. #369-1, TR at 74:1-77:12]. Defendants argue the court erred in so ruling.

OUTSA defines a "trade secret" as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that: (a) derives independent economic value, actual *or potential*, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

78 Okla. Stat. § 86(4) (emphasis added). Significantly, the OUTSA definition encompasses both actual and potential value. Thus, an accounting of present value does not necessarily prove or disprove whether information is a "trade secret" within the meaning of OUTSA. Any probative value of such testimony would have been substantially outweighed by confusion of the issues and misleading the jury.

The court concludes the testimony regarding valuation of trade secrets in the Deloitte Report was properly excluded.

### E. Jury Instruction on Employee's Right to Use Experience

Defendants submitted proposed jury instructions regarding an employee's right to use his general skill, knowledge, training and experience to compete with his former employer.  [Dkt. #260 at 42, 46].  The Oklahoma case authority supporting the requested instruction predated OUTSA.  The court instead gave an instruction explaining the elements of trade secret misappropriation under OUTSA and an instruction that "a person has the right to use ideas generally known to all and may combine with such general knowledge his own abilities and his knowledge of the customs of the market, as long as he does not make use of or disclose another's trade secrets."  [Dkt. #292 at 27-29, Jury Inst. Nos. 22, 23].

The decision whether to give a particular jury instruction is within the sound discretion of the court.  *Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368 (10th Cir. 1996).  The instructions need not be faultless in every particular, but must "correctly state[] the governing law and provide[] the jury with an ample understanding of the issues and applicable standards."  *Id.*

The court concludes the instructions concerning trade secret misappropriation correctly stated Oklahoma law governing trade secrets.  Therefore, defendants' motion for new trial on this issue is denied.

### III. Conclusion

For the foregoing reasons, defendants' Motion for New Trial [Dkt. #369] is denied.

ENTERED this 20th day of September, 2013.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

24