**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SKYCAM, LLC, a Delaware limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 09-CV-294-GKF-FHM |
| PATRICK J. BENNETT, an individual, and ACTIONCAM, LLC, an Oklahoma limited liability company, | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Before the court is the Motion for Relief from Judgment [Dkt. #424] filed by plaintiff Skycam, LLC ("Skycam"). Skycam seeks modification of the court's Opinion and Order of September 27, 2012, which imposed a royalty injunction against defendant Actioncam, LLC ("Actioncam") [Dkt. #347] and the Judgment entered September 30, 2012. [Dkt. #349]. David C. Rhoades, the state court-appointed receiver of the assets of Actioncam, LLC ("Receiver"), filed a response objecting to the motion. [Dkt. #429].[1]

**I. Background/Procedural History**

The parties manufacture competing aerial camera systems for use in the broadcast of sporting events. Skycam sued Patrick J. Bennett ("Bennett"), a former Skycam employee, for breach of a separation agreement that prohibited him from using or disclosing Skycam's trade secrets and confidential or proprietary information. Skycam also asserted federal and state claims of misappropriation of trade secrets and unfair competition/false advertising against

---

[1] The Receiver also filed a Motion to Intervene in this case. [Dkt. #431]. Skycam filed a response objecting to the Receiver's motion. [Dkt. #434].

Bennett and his company, Actioncam, LLC ("Actioncam"). Additionally, it claimed an ownership interest in defendants' pending patent applications based on an "employed to invent" theory.

The breach of contract, trade secret misappropriation, and unfair competition claims were tried to a jury. The jury returned a verdict in favor of Skycam [Dkt. #296] as follows:

- The jury found in favor of Skycam and against Bennett on the breach of contract claim and awarded Skycam $100,000 in damages;

- The jury found in favor of Skycam against Bennett and Actioncam on Skycam's claim for misappropriation of trade secrets, and awarded Skycam $239,000 in damages;

- The jury found in favor of Skycam and against Bennett and Actioncam on Skycam's claim for unfair competition and awarded Skycam $180,000 in damages;

- The jury awarded punitive damages of $75,000 against Actioncam.

The court entered partial judgment on the jury verdicts in favor of plaintiffs and against the defendants. [Dkt. #297].

Subsequently, Skycam filed an Application for Injunction in which it sought an injunction prohibiting defendants from (1) using Skycam's trade secrets or, alternatively, awarding Skycam a reasonable royalty for future use or potential use of trade secrets, and (2) selling, marketing or advertising its aerial camera system through the use of false and/or misleading representations as to its capabilities, speed, accuracy or superiority over Skycam's system and ordering defendants to undertake advertising to correct prior false statements. [Dkt. #305].

The court conducted a nonjury trial and, on September 27, 2012, entered an injunction requiring defendants to pay royalties to Skycam for their use of the misappropriated trade secrets, prohibiting them from making false or misleading statements concerning the respective

capabilities of the Actioncam system and the Skycam system and requiring them to do corrective advertising ("Injunction Order"). [Dkt. #347 at 10-11]. The time period for the royalty injunction was September 3, 2011, through February 28, 2013, and the royalty amount was "$5,000 per event for each paid event covered by Actioncam during [that time] period." [Dkt. #347 at 7].

In ruling on the application, the court identified four requirements for entry of a permanent injunction: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, would not adversely affect the public interest. [Dkt. #347 at 3] (citing *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009). The court found that Skycam had met the first three requirements for an injunction. [*Id.* at 3-4]. And it concluded that a properly tailored injunction would serve the public interest. [*Id.* at 4-5]. However, it stated that a prohibitory injunction "would eliminate competition and technological innovation in the aerial camera market—which has relatively few competitors—in derogation of the public interest." [*Id.* at 6]. Therefore, the court opted for entry of a royalty injunction, which it concluded would meet all four requirements, including serving the public interest [*Id.*]. Skycam did not file a motion for new trial or for reconsideration of the order.

With respect to the plaintiff Skycam's Ninth Claim for Relief in its Third Amended Complaint, the court found in favor of defendants and against Skycam on its patent ownership claim. [Dkt. #348].

The court entered final judgment in the case on September 30, 2012. [Dkt. #349]. Defendants filed a Motion for New Trial [Dkt. #369] and a Motion to Stay execution of the final judgment pending disposition of the Motion for New Trial. [Dkt. #361]. Skycam did not oppose

a stay of execution with respect to the monetary damages but objected to a stay of the injunctive relief. [Dkt. #365]. It requested that if the court stayed the royalty injunction, Actioncam be required to post a supersedeas bond that would cover all royalties that had been incurred from September 2, 2011 through the current date, as well as estimated royalties that would be incurred from the then-current date through the end of the royalty period. [*Id.*]. The court granted the Motion to Stay. [Dkt. #367].

The court denied defendants' Motion for New Trial. [Dkt. #396]. On September 27, 2013 William R. Grimm, Cori D. Powell and David A. Sturdivant of the firm Barrow & Grimm, P.C. filed a Motion to Withdraw as Counsel of Record for Defendants. [Dkt. #402]. The court granted the motion with respect to the attorneys' representation of Actioncam, LLC, which continued to be represented by co-counsel Shawn M. Dellegar of Head, Johnson & Kachigian. [Dkt. #416].[2]

On November 8, 2013, Skycam filed a pleading titled "Plaintiff's Motion to Enter Final Judgment and Request for Expedited Hearing." [Dkt. #421]. It attached a proposed Journal Entry of Final Judgment which identified a time period for the reasonable royalty injunctive relief of September 20, 2013, through March 20, 2015. [*Id.*, Ex. B]. It acknowledged this was different than the time period set in the court's Opinion and Order of September 27, 2013. [*Id.* at 2]. Skycam explained it made the change because the injunction was stayed during the original injunction period and therefore, "the reasonable royalty injunction should begin running on September 20, 2013 (the date the stay was lifted), and run for the same duration as specified by the Court." [*Id.* at 3]. Further, it asserted, "The revision is also critical because . . . not moving the injunction period would cause severe prejudice to Skycam due to improper actions by

---

[2] The motion was denied without prejudice with respect to Bennett. [Dkt. #405]. Subsequently, counsel filed a renewed Motion to Withdraw as Bennett's counsel, which the court granted after Bennett filed a *pro se* appearance. [Dkt. ##407, 416, 417].

Actioncam and its counsel." [*Id.*]. The proposed Journal Entry of Final Judgment also changed the language of the original Injunction Order to specify the reasonable royalty injunction required payment of "$5000 per event covered per camera per day." [Dkt. #421, Ex. B]. Skycam stated "clarification appears to be necessary, as Defendants contend that coverage of Olympic events over multi week periods should not be counted as individual events." [*Id.* at 3].

On November 12, 2013, the court entered an order stating that final judgment had already been entered and that Dkt. #421 would be construed to be a motion for relief from a judgment or order pursuant to Fed. R. Civ. P. 60. [Dkt. #423]. It ordered Skycam to file a brief setting forth legal authority, if any, for the granting of the relief requested and particularly whether the court may alter the terms of judgment favorable to the party now requesting relief. [*Id.*]. The pending motion was filed in response to that order.

## DBA Debt

On July 18, 2011—more than a month before jury trial of this case commenced—Actioncam executed a promissory note to defendants' counsel, Barrow & Grimm, P.C., for $800,000.00 in legal fees incurred in defense of this lawsuit. The Note was payable on demand or no later than January 1, 2012. [Dkt. #424, Ex.1]. Actioncam also executed a Pledge and Security Agreement pledging its interest in all tangible and intangible personal property of Actioncam, including all of its aerial camera systems and related equipment, all contracts, accounts, notes, cash, bank accounts, receivables and intellectual property which comprise its business operations ("Collateral") [*Id.*, Ex. 1, Ex. B thereto]. A UCC-1 Financing Statement identifying the Collateral was filed in the office of the Oklahoma County Clerk on October 20, 2011. *See DBA Collections, LLC v. Actioncam*, *LLC*, Tulsa County Dist. Court Case No. CJ-2013-04698, Petition for Collection of Indebtedness, Ex. C thereto.

5

After defendants' Motion for New Trial was denied, Barrow & Grimm assigned its security interest to a newly formed limited liability company called "DBA Collections, LLC" ("DBA Collections") on September 25, 2013. The ownership of DBA Collections is not known, but Grimm is its registered agent.

### State Court Receivership

On October 9, 2013, DBA Collections filed a collection action against Actioncam, LLC in Tulsa County District Court, Case No. CJ-2013-4698. Grimm is counsel of record for DBA Collections in the action. Contemporaneously, DBA Collections filed an Emergency Motion to Appoint Receiver. On October 18, 2013, Tulsa County District Judge Jefferson D. Sellers entered an order granting the motion and appointing C. David Rhoades as Receiver over all the assets of Actioncam, LLC. [Dkt. #429, Ex. A]. The order states, in pertinent part:

> 10. In order to promote judicial efficiency, all persons who receive actual or constructive notice of this Order are enjoined from in any way disturbing or exercising control over the assets or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver or the assets unless such person or persons first obtains the permission of this Court or the Receiver.

[*Id.* at 22].

On October 31, 2013, DBA Collections filed a motion for summary judgment on its claim against Actioncam, LLC. [Dkt. #424, Ex. 5]. Skycam filed a motion to intervene on November 15, 2013, and a motion to extend the deadline for responding to the motion for summary judgment on November 18, 2013. The receiver objected to the motion to intervene. On December 17, 2013, after a hearing, the court granted both motions. OCIS Case Summary for CJ-2013-4698, #87796259.

6

**Formation of Actioncam, Inc.**

Skycam alleges that in June 2013, Grimm incorporated a new entity, Actioncam, Inc., and that Phillip Smauder, the current Vice President and majority owner of Actioncam, LLC, is a principal of Actioncam, Inc. According to Skycam, Actioncam, Inc. has been soliciting contracts that would otherwise have been covered by Actioncam, "apparently for the purpose of shifting the business of the judgment-encumbered Actioncam" to Actioncam, Inc. [Dkt. #424 at 17]. Skycam alleges that in his Hearing on Assets ("HOA") testimony, Bennett testified Actioncam, Inc. has contracted for the 2014 Winter Olympic games in Sochi (with Bennett signing the contract as president); and Actioncam, Inc. is planning on using Actioncam, LLC's equipment, with proceeds going to Actioncam, Inc. Skycam contends Actioncam, Inc. is but an alter-ego of Actioncam, LLC, formed to avoid Skycam's judgment against Actioncam, LLC.

**Requested Relief**

In the pending motion, Skycam presents three proposed alternative changes in the court's original injunction order:

First, Skycam asks the court to enter a prohibitory injunction on usage of the misappropriated trade secrets and specify that it attaches to the trade secrets themselves and any equipment incorporating the trade secrets. [Dkt. #424 at 7].

Second, and in the alternative, it seeks modification of the time period of the royalty injunction so that it runs from September 20, 2013, to March 20, 2015. [*Id.*]. Additionally, Skycam seeks entry of an order "stating that the Royalty Injunction attaches to the trade secrets themselves (and any equipment they have been incorporated into) to avoid any sham transactions of Actioncam's equipment." [*Id.*].

Third, and also in the alternative, it asks the court to enter an injunction against Actioncam's sale of any assets containing the maliciously misappropriated trade secrets (i.e., the Actioncam systems) to any third party unless and until Actioncam compensates Skycam for those trade secrets per the court's judgment. [*Id.* at 8].

Additionally, Skycam requests an evidentiary hearing, preceded by a "brief and expedited discovery schedule" to determine what additional damages Skycam has suffered by virtue of Actioncam's continued use, after the jury verdict, of statements and representations that have been adjudicated false and misleading. [*Id.*]. Skycam also asks the court to clarify the Injunction Order to specify that the royalty set "per event" includes individual events, covered per camera, per day. [*Id.*].

C. David Rhoades, the receiver of the assets of Actioncam, LLC ("Receiver"), opposes the motion, arguing the court lacks jurisdiction to enter any order affecting his ability to manage and dispose of Actioncam's assets. Additionally, he asserts Skycam has failed to establish cause to modify the injunction order and that the remedies requested in the motion are not appropriate.

## II. Jurisdictional Challenge

The Receiver asserts this court lacks jurisdiction to grant the relief requested by Skycam. He argues that the state court's Order Appointing Receiver vested jurisdiction over the assets with the state court.[3]

---

[3] The Receiver contends this court's exercise of jurisdiction would violate the *Barton* doctrine. The Tenth Circuit has explained:

> In *Barton*, the Supreme Court held that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." 104 U.S. at 128. A plaintiff who brings such a suit, the Court explained, attempts to "obtain some advantage over the other claimants upon the assets in the receiver's hands." *Id*. If allowed to proceed, "the court which appointed the receiver and was administering the trust assets would be impotent to restrain" such a plaintiff, complicating the proper administration of the estate. *Id.*

Under the "prior exclusive jurisdiction" doctrine, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 296 (2006) (quoted in Wright and Miller, 4A Fed. Prac. & Proc. Civ. § 1070 (3d ed.)). The doctrine is set forth in the Oklahoma cases cited by the Receiver. *See, e.g.*, *Woolley v. Shaw*, 136 P.2d 398, 403 (Okla. 1943) ("[W]henever there is a likelihood of two courts of concurrent jurisdiction coming to conflict in their orders *with respect to specific property*, the court first having jurisdiction of the specific property has exclusive jurisdiction.") (emphasis added). *See also State ex rel. Ketchum v. Dist. Court of Tulsa County*, 198 P. 480, 482 (Okla. 1921) ("[W]herever a state or federal court has lawfully taken jurisdiction of a case for the purpose of subjecting assets within its territory to the charge of disposition which the law applicable to the case requires, such assets are thereby brought *in custodia legis*, subject to the power and control of the court, and . . . no other court of co-ordinate jurisdiction can . . . lawfully deprive the court, which has already acquired the right of control, of the possession of them.")

Suits *in rem* are those brought "to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property." *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 477 (1936). In contrast, suits brought to enforce a personal liability, establish a debt or a right to share in property are *in personam* in nature. *Id.* A court does not disturb the possession of property in

---

*Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012) (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)). The court is not convinced the *Barton* doctrine is applicable to this case because this lawsuit was filed in 2009, well before the state court collection action against Actioncam was filed or a receiver was appointed. As a result, this is not an action against the receiver.

9

another court merely by exercising its jurisdiction to adjudicate rights in such property. *Markham v. Allen*, 326 U.S. 490, 494 (1946).[4]

Applying these guidelines, it is clear that this court has merely exercised *in personam* jurisdiction. The state court, when it appointed a receiver, exercised *in rem* jurisdiction over all of Actioncam's assets. Thus, pursuant to the prior exclusive jurisdiction doctrine, this court is precluded from taking action that would result in the exercise of *in rem* jurisdiction.

As previously noted, Skycam proposes that the court amend its injunction by entering one of three potential injunctions: (1) a prohibitory injunction on usage of the misappropriated trade secrets that specifically attaches to the trade secrets themselves and any equipment incorporating the trade secrets; (2) modification of the time period of the royalty injunction so that it runs from September 20, 2013 to March 20, 2015 and an order stating that the Royalty Injunction attaches to the trade secrets themselves and any equipment they have been incorporated into to avoid any sham transactions of Actioncam's equipment; and (3) an injunction against Actioncam's sale of any assets containing the maliciously misappropriated trade secrets (i.e., the Actioncam systems)

---

[4] Federal courts have been known to enter enforceable *in rem* injunctions which are binding on all persons, regardless of notice, who come into contact with property which is the subject of a judicial decree. *See United States v. Hall*, 472 F.2d 261, 265-66 (5th Cir. 1972) (school desegregation case in which the appellate court held, "A court entering a decree binding on a particular piece of property is necessarily faced with the danger that its judgment may be disrupted in the future by members of an undefinable class—those who may come in contact with the property. The *in rem* jurisdiction protects the court's judgment."). However, Wright and Miller, 11A Fed. Prac. & Procedure, has cautioned:

> [T]he application of in rem jurisdiction to injunction decrees seems dubious. To begin with, in the absence of notice "reasonably calculated, under all circumstances, to apprise interested parties" of the entry of a decree, an attempt to enforce the decree against a nonparty would violate due-process principles. . . . Therefore, as a practical matter, it probably is wise for a court to exercise its discretion and decline to enter a decree against "untitled" property since, absent a clear showing of actual notice, its order would be unenforceable. At a minimum, if a court dealing with moveable property does take jurisdiction, it should attempt to make it impossible for the res to be sold without the purchaser learning of the decree. Even assuming the notice problem can be overcome, there is a second objection to issuing in rem decrees—a remote purchaser of property that has been subjected to a judicial order who is acting on his own behalf does not seem to qualify under any of the categories of persons who may be bound described in Rule 65(d)(2).

Wright and Miller, 11A Fed. Prac. & Procedure, § 2956.

to any third party unless and until Actioncam compensates Skycam for those trade secrets per the court's judgment.

The third alternative clearly violates the prior exclusive jurisdiction doctrine, as it would require this court to exercise *in rem* jurisdiction by barring sale of either the misappropriated trade secrets or any equipment incorporating the technology. Likewise, the prohibitory injunction requires an exercise of *in rem* jurisdiction because it would prohibit use of the trade secrets themselves and would attach to equipment incorporating the trade secrets.

Even the proposed extension of a royalty injunction—as described by Skycam—would violate the prior exclusive jurisdiction doctrine because the court, by entering an order stating the royalty obligation attaches to the trade secrets themselves and any equipment incorporating them, would be exercising *in rem* jurisdiction over those assets.[5]

The court lacks jurisdiction to enter any of the proposed injunctions. However, the request to have an evidentiary hearing to determine damages to Skycam from alleged violations of the injunction's prohibition against making false claims in advertising and marketing its products does not require the court to assert *in rem* jurisdiction. Therefore, the court has jurisdiction to consider that request. Similarly, Skycam's requested clarification of the royalty injunction, i.e., that the injunction requires a $5,000 payment on every sporting event, game or match, per camera, per day, does not implicate *in rem* jurisdiction. Thus, the court has jurisdiction to entertain these requests.

---

[5] This does not mean Skycam is without recourse. The gravamen of Skycam's complaint is that Actioncam and its attorneys have colluded to give counsel priority over Skycam in collection of amounts Actioncam owed them. Skycam has been permitted to intervene in the state court case and to file a response in opposition to plaintiff's motion for summary judgment. As the Receiver states, if Skycam disputes the validity of any creditor's liens or claims, it is free to raise such issues before the state court. [Dkt. #429 at 10].

### III. Rule 60(b)(6) Standard

Fed. R. Civ. P. 60 governs the granting of relief from a final judgment. Rule 60(b)(1)-(5) sets forth specific grounds for relief, including mistake, newly discovered evidence, fraud, and satisfaction of judgment. Rule 60(b)(6), which has been described as a "catch all" provision, states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief.

Relief from a judgment is potentially available even to *prevailing* parties under Fed. R. Civ. P. 60(b). *See United States ex rel. Familian Nw., Inc. v. RG & B Contractors, Inc.*, 21 F.3d 952 (9th Cir. 1994) (considering Rule 60(b) motion filed by successful litigant who discovered after judgment was entered that it had overlooked certain invoices, which would have increased the amount of judgment); *Transp., Inc. v. Mayflower Serv., Inc.*, 769 F.2d 954, 954 (4th Cir. 1985); *In re Von Borstel*, 2011WL 477817, *4 (Bkrtcy. D. Or. Feb. 3, 2011) ("The rule does not say that 'a losing' party may obtain relief; it says 'a' party."); *Flowers v. S. Reg'l Physician Servs.*, 286 F.3d 798, 801 (5th Cir. 2002) (affirming district court's grant of Rule 60(b)(6) motion filed by defendant who, after prevailing on appeal of adverse jury verdict, sought to vacate district court's earlier award of attorney fees to plaintiff).

However, Rule 60(b)(6) is narrowly interpreted. *See Moore's Federal Practice* ¶60.48[1] (3d ed. 2013). The Tenth Circuit has described the provision as "a 'grand reservoir of equitable power to do justice in a particular case.'" *In re Woods*, 173 F.3d 770, 780 (10th Cir. 1999) (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc)). "Relief under Rule 60(b)(6) is appropriate to accomplish justice in an extraordinary situation." *Pierce*, 518 F.2d at 723 (citation omitted). Rule 60(b)(6) relief "is appropriate . . . when it offends justice to

deny such relief." *Woods*, 173 F.3d at 780 (citation omitted).  A Rule 60(b) motion is addressed to the sound discretion of the court.  *Pierce*, 518 F.2d at 722.

### IV. Analysis

In accordance with the standard set forth above, the court's focus is whether the circumstances of this case are sufficiently extraordinary to warrant relief with respect to the requested clarification of the terms of the royalty injunction and/or an award of damages for violation of the injunction against false advertising.

The Injunction Order provides that "Skycam is entitled to receive royalties of $5,000 per event for each paid event covered by Actioncam."  [Dkt. #347 at 7].  Skycam alleges Actioncam has attempted to subvert this language by claiming that a contract that provides for payment of multiple events nevertheless counts as a single event.  By way of example, it asserts that in the summer of 2012, Actioncam covered the Summer Olympic Games in London, and the contract included coverage of multiple events, by multiple cameras, over a period of two weeks. [Dkt. #424 at 28].[6]

Additionally, Skycam contends Actioncam has violated the injunction against use of false or misleading statements.  It submits a copy of Actioncam's contract for coverage of the 2012 Summer Olympics, which provided in pertinent part that Actioncam would provide two Actioncam systems that "have the capability of going up to 40 mph speed,"—a representation Actioncam asserts is false. [Dkt. #424, Ex. 8].[7]  Skycam also references a July 23, 2013 printout of the Actioncam website which it alleges contains unsubstantiated claims of the Actioncam system's speed.  The printout was not, however, attached to the brief.

---

[6] Skycam references a "9/26/13 E-mail from B. Grimm."  The court has been unable to locate the referenced email.  However, the contract itself is attached as Ex. 8 to Skycam's motion.  However, the contract is dated September 2011—before the injunction was entered.

[7] The court notes that the 2012 Summer Olympics contract was executed and performed before the Injunction Order was entered.

The court has inherent power to enforce its injunctive orders through contempt of court proceedings. *See* 11A Wright, Miller & Kane, Federal Practice and Procedure § 2960 (2d ed. 1995); *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501, 511 (10th Cir. 1968), *cert. denied* 391 U.S. 905 ("Civil contempts provide a remedy for a party who has been injured by the violation of a court order.").[8]

An evidentiary hearing is warranted on Skycam's request for clarification of the terms of the royalty injunction and for damages for alleged violation of the false advertising prohibition, as set forth above. Skycam will be permitted to conduct discovery on alleged violations of the prohibitory injunction against false advertising from September 20, 2013 forward.

## V. Conclusion

Skycam's Motion for Relief from Judgment [Dkt. ##424] is denied in part and granted in part, as set forth above. An evidentiary hearing is set for April 18, 2014 at 9:30 a.m. on Skycam's request for clarification of the terms of the royalty injunction and for an award of damages for violation of the false advertising prohibition.

ENTERED this 30th day of January, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[8] Due to the stay of execution of the injunction, the court may punish Actioncam for false advertising incidents occurring after September 20, 2013—the date the Motion for New Trial was denied.

14